Argued July 9, affirmed September 9, 1919, rehearing denied April 27, 1920.

# COFFEY *v.* NORTHWESTERN HOSPITAL ASSN.*

(183 Pac. 762; 189 Pac. 407.)

**Evidence—Presumption of Receipt of Mailed Letter.**

1. There is a strong presumption that a letter or postal card marked and addressed to defendant, and mailed by plaintiff, was received by the defendant, and whether this presumption was overcome by defendant's evidence was a question of fact for the jury.

> [As to the presumption of the receipt of letter, see note in Ann. Cas. 1917E, 1058. As to rebuttal of the presumption of receipt of letter, see notes in 4 Ann. Cas. 956; Ann. Cas. 1912D, 1065.]

**Contracts—On Refusal of Hospital Treatment Under Contract Another Request Unnecessary.**

2. Where defendant hospital association, which had contracted to furnish medical, surgical, and hospital service to plaintiff in case of illness, in replying to plaintiff's request for care and service virtually refused to treat plaintiff on the ground that her disease was chronic, and not subject to treatment under the contract, plaintiff was relieved from making further requests for treatment.

**Contracts—Whether Plaintiff had Chronic Disease Within Contract for Treatment, for Jury.**

3. In an action for breach of a contract to render plaintiff medical and surgical treatment and furnish hospital facilities whether plaintiff's ailment was chronic, and therefore not covered by the contract, was a question of fact for the jury, a chronic dis-

---

*On mental suffering as element of damages against physician or surgeon, see note in 51 L. R. A. (N. S.) 36.    REPORTER.

ease being one of long duration, or characterized by slowly progressive symptoms.

**Contracts—Failure to Pay Assessment not Breach of Contract.**

4. In an action for breach of a contract to furnish medical and hospital services, the fact that plaintiff did not pay an assessment when due is immaterial, where the contract provided that "no cancellation of membership shall be made while the member is sick," and plaintiff was ill at such time.

**Contracts—Limiting Place for Furnishing Medical Services not Authorized by Contract.**

5. In an action for breach of a contract by defendant hospital association to furnish free hospital services where a hospital is provided, and free medical and surgical treatment, without specification as to place to be rendered, *held*, that an instruction that, under the terms and conditions of the contract, defendant was not bound to render services to plaintiff outside of the city and county in which defendant hospital was located was properly refused.

### ON PETITION FOR REHEARING.

**Damages—Inference of Physical Suffering from Nonperformance of Contract for Medical Services Held Justified.**

6. The fact of plaintiff's speedy relief when finally she was able to get medical assistance *held* to justify inference that she suffered physical pain through nonperformance by defendant of its contract to furnish her medical and hospital service.

**Damages—Mental Suffering With Physical Pain Element of Damage.**

7. Mental anguish concomitant with physical pain suffered through breach of contract to furnish medical and hospital service is an element of damages.

**Damages—Mental Suffering as Element of Damage Held Within Contemplation of Parties to Contract for Medical Care.**

8. That a resort to charity, with accompanying humiliation and mental anguish, might result to plaintiff from failure of defendant to keep its contract to furnish plaintiff medical and hospital services in case of sickness was a contingency naturally within the contemplation of both parties.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

This is an action for breach of a contract to furnish plaintiff medical and surgical services in case of illness. The terms of the contract, or policy, so far as they relate to this case, are as follows:

"Class B.                   Contract No. 5204.
"Northwestern Hospital Association of the State of Oregon.

"In consideration of a membership fee of One Dollar, and of Fifty Cents a month dues, the Northwestern Hospital Association of the State of Oregon, hereby agrees to care for Mrs. C. W. Dennis, residing at Portland, Oregon, in case of sickness or accident, by furnishing her with Medical, Surgical and Hospital Services, as provided herein. This agreement is entered into, upon the consideration that the member shall strictly comply with her part of the provisions and conditions herein contained, or endorsed hereon.

"Article I. Hospital services, where provided by the Association, such hospital service not to exceed one hundred days when caused by any one illness or injury, but after the expiration of said period, necessary treatment may be continued outside of the hospital for six months subject to the conditions of this agreement.

"Article II. Necessary medical and surgical treatment by any one of the physicians on the Medical Staff of the Association, shall be furnished free, subject to the conditions of this agreement, limited to six months.

"Article III. All necessary drugs and prescriptions are furnished free, when prescribed by any member of the Medical Staff of the Association, subject to the conditions of this agreement. * *

"Article VI. Free ambulance service will be furnished members, when necessary, at any point within corporate limits of Portland, Oregon.

"Article VII. All applicants for membership shall subject themselves to an examination by some member of the Medical Staff of the Association, if deemed necessary, before being received into membership, which examination will be furnished free of charge to applicants.

"Article VIII. This agreement does not cover Pregnancy, Insanity, Venereal, Alcoholic, Narcotic, or Chronic Diseases, nor persons afflicted with Can-

cer, and the Association is under no obligations to treat any of said troubles or diseases. * *

"Article X. The Association may cancel this agreement at any time by a written notice served upon the member personally to that effect, or by letter sent by registered mail to her address, for just and due reasons, and by returning to said member the balance of any monthly fees paid, but no cancellation of membership shall be made while the member is sick, or under treatment by the Association, for any reason.

"Article XI. Notice of the injury or illness of any member must be given to the association as soon as possible after the inception of such illness or injury, if the member deems such illness or injury of sufficient importance to need treatment.

"Article XII. No erasures nor changes in this agreement or waiver of any of its agreements, shall be valid, unless added hereto in writing and signed by the President and Secretary of the Association, and the Association will not be bound by any lawful statements of any kind or nature."

The plaintiff paid her first dues and received her contract on October 15, 1911, and on October 25, 1915, became sick at Eugene, Oregon, and sent a postal card by mail to defendant at Portland, Oregon, stating that fact and demanding treatment. The card was not replied to and defendant's officers and agents testify that it was never received. On November 4, 1915, plaintiff wrote to defendant as follows:

"N. W. Hospital Assn.,
    "Portland, Oregon.
    "Early in the week I sent an imperative call for help. I am sick and have no money for medicine or doctor. Have been in bed almost a week. It is a shame you have allowed me to lay and suffer without making any effort to assist me. If this is your care of the sick away from home I don't care to

spend anything more on my membership. I am a very sick woman and needing help. You have entirely ignored my card and call for help.

"MRS. COFFEY,
"No. 116 E. 9th St., Eugene, Ore.
"I want to hear at once."

On November 5th, defendant wrote as follows:

"Portland, November 5, 1915.
"Mrs. C. W. Coffey,
"116 East 9th St.,
"Eugene, Oregon.
"Dear Madam:
"We are in receipt of your letter of the 4th inst., and in reply will say that we did not receive a card from you, therefore do not have any idea what is the matter with you.

"We do not have doctors at Eugene, but if there is anything we can do for you from this office, we will gladly do so. Or if you care to come to Portland we will take care of you.

"Yours very truly,
"NORTHWESTERN HOSPITAL ASSN.,
"By R. C. POWELL, Manager."

On November 15th plaintiff caused her daughter to write the following letter to Dr. W. E. Stewart, who was the principal physician of the defendant.

"Eugene, Ore., Nov. 15, 1915.
"Dr. W. E. Stewart,
"Dear Sir and Friend:
"I am writing this for mamma. She has been lying in bed very sick for two weeks. Has suffered intensely but has not called a doctor because she has no means. Could not sit up long enough to write to you. Today she *had* to call a doctor for an examination. I will tell you how she has suffered, what grandma has done for home nursing, and lastly, what the doctor said.

"Mama has been working in a department store here, and has been doing her own house work. She

was out of bed at six-thirty and never retired until eleven. On her feet continuously all those hours. The store work was very hard; stooping and bending all that time. Last week she suffered untold agony with her left side. At the close of the week she went home and to bed. The left ovary was so painful she could not stand the weight of the hand on it. Could not relax the sphincter muscle for a bowel movement without screaming. Could not urinate without intense pain, and getting down on her hands and knees. All night long she was bathed in perspiration, even her hands being soaking wet. She had no appetite. Grandma is here. She placed hot fomentations of turpentine over the left ovary, first thoroughly cleansing her bowels, later giving Captogen tablets. During the time her monthly period came. She had been having a bad discharge all the time and taking salt douches for it. Taking her cleansing douche after her monthly, upon removing the douche point found it covered with pus. Since then her napkins has been daily covered with pus. Pain around the rectum and vagina simply maddening.

"To day Dr. Scaife, of Eugene, made an examination and found her in a terrible shape. He says the left tube is pusy, and ovary and tube will have to be removed. Says he is very fearful of peritonitis. Uterus is out. He packed her with cotton and melierne, gave her two kinds of medicine to take, one a capsule the other a liquid, taken alternately every one and one-half hours. Told her he would do what he could but did not encourage her. She asked when she would go back to work and he told her 'Not at all.' She will have to be operated on. Mr. Powell wrote her last week to come home and the N. W. H. A. would take care of her. She wants *you* to attend to the operation yourself. Arrange with the Good Samaritan Hospital and get a bed in Ward H. H. Get arrangements made and let us know at once. Mama will go straight from train to hospital.

"Trusting that everything has been made plain and that we will hear from you at once, I am,

"Your truly,

"MRS. L. E. HENIKA.

"Address, Mrs. C. W. Coffey,
    "Apt. 6, 116 E. 9th St.,
        "Eugene, Ore.

"P. S.—Doctor says the perspiration is caused by toxine poisoning from the pus, and would be very serious if the perspiration should stop.

"V. H."

To which defendant answered as follows:

"November 16, 1915.

"Mrs. C. W. Coffee,
    "116 East 9th St.,
        "Eugene, Oregon.

"Dear Madam:

"Your letter to Dr. W. E. Stewart was referred to me and in reply will say that you have been examined by our physicians for this condition, and upon their advice I will inform you that this condition has been chronic with you for some years before entering the Hospital Association, and does not come under our contract; however, if you desire to come to Portland and have our doctors examine you, and if it is a case that comes under the Hospital Association's contract, we will be glad to take care of you.

"Yours very truly,

"NORTHWESTERN HOSPITAL ASSN.,

"By R. C. POWELL, Manager."

On November 26, 1915, plaintiff wrote inclosing dues from November 15th to December 15th, and on the 27th the money was returned with a note stating the plaintiff's contract had been canceled for non-payment of dues. On February 9, 1916, plaintiff brought this action, alleging compliance on her part with all the conditions of the contract and failure and refusal on the part of the defendant, after no-

tice and request,. to furnish the necessary medical, surgical and hospital services, as required by the contract. The complaint further alleged that plaintiff had been unable to procure such services elsewhere and that by reason thereof the plaintiff had been damaged in the sum of $750, which she claimed was the reasonable cost and value of the medical, surgical and hospital services necessary to treat and cure plaintiff of her sickness and disease. Then follows the following allegation:

"That notwithstanding the defendant was informed and well knew at the time plaintiff entered into the aforesaid contract with the defendant, that in entering into the aforesaid agreement with defendant, plaintiff was providing herself with expert medical services in event plaintiff became afflicted with sickness or disease in the future, and to protect and prevent herself from becoming an object of charity in such event, and, notwithstanding, that at the time plaintiff notified defendant of her said sickness, as aforesaid, defendant was informed and well knew that plaintiff was wholly without money or funds, and was unable to secure the money or funds with which to procure medical, surgical and hospital services to treat her aforesaid sickness and disease, said defendant failed and refused to give, furnish or render plaintiff with medical, surgical and hospital services, as aforesaid, and by reason thereof plaintiff was compelled to make application to the County Court of Lane County, Oregon, for medical and surgical services . and also for hospital services to treat her said sickness and relieve herself from bodily pain and suffering, but the County Court of Lane County refused to give plaintiff said medical services for the reason that plaintiff had not been a resident of Lane County for six months prior to her aforesaid application for said services, and by reason thereof plaintiff has been unable to procure treatment for her said disease and sickness and relieve herself from bodily pain and suffering and

has thereby sustained and does now sustain great bodily suffering, humiliation and mental anguish, to her damage in the further sum of $2,000.''

The complaint concludes with a prayer for $2,750 damages.

Defendant answered, admitting its corporate capacity and the execution of the contract, denying that plaintiff had paid her monthly assessments and dues as therein stipulated; denied on information and belief the allegations as to plaintiff's sickness, and denied generally every other allegation of the complaint, except the allegation that it had canceled the contract.

For a further and separate defense defendant alleged that it had at all times been ready and willing to take care of plaintiff, in strict accordance with its' contract, but that plaintiff never applied for treatment at Portland, Oregon, and that if she had been sick and needed treatment she never notified defendant, and the defendant did not know she was sick and needed treatment in Portland, Oregon; that about the fifteenth day of November, 1915, plaintiff wrote from Eugene, or caused a letter to be written by her daughter, stating that plaintiff 'was sick and needed treatment, and the association immediately, and on November 16, 1915, wrote plaintiff that if she would còme to Portland and have the hospital doctors examine her, and her sickness was such as came within the terms of their contract with her, the defendant would be glad to take care of her. Plaintiff wrote some two or three letters from Eugene, but was informed that the defendant had no doctors in Eugene and that if she wanted an examination and *if* necessary treatment, she must come to Portland, Oregon, where defendant was prepared to take

care of its members, but defendant alleges that it has not heard from said plaintiff since November 27, 1915, and the plaintiff was then in Eugene, and this defendant had no knowledge that plaintiff had come to Portland until served with the papers in this action; that plaintiff well knew that the defendant could not and would not treat her at Eugene, as she states in paragraph ''V'' of her complaint, and she was accordingly notified of that fact and requested to come to Portland, and the association would take care of her, but that she never did call for help in any way at Portland, Oregon, but began this action without having first demanded treatment at Portland, Oregon; that plaintiff failed, neglected and refused to make her monthly payment for dues for the month ending November 15, 1915, and her contract with the association was thereby terminated, canceled and annulled, and plaintiff was so notified in writing that her policy was canceled and annulled, and that at the time said notice was so given the plaintiff she was not under treatment by defendant.

The new matter being put at issue by an appropriate reply, the case came to trial and there was a verdict and judgment for plaintiff for $1,500, from which defendant appeals.                    Affirmed.

For appellant there was a brief and an oral argument by *Mr. C. D. Christensen.*

For respondent there was a brief and an oral argument by *Mr. William P. Lord.*

McBRIDE, C. J.—1. Plaintiff's evidence tended to show that she was taken sick, as alleged in the complaint, and that she mailed a card to defendant, as alleged. There is a strong presumption that a let-

ter so marked was received, and whether this presumption was overcome by the evidence of defendant was a question of fact for the jury. The receipt of the letter of November 15th is admitted by defendant, in which the condition of the plaintiff was fully described, and there is no question raised in the testimony that it was not substantially a correct statement of her condition.

2. The reply was substantially a refusal to treat her under the contract for the disease under which she was suffering, upon the ground that it was chronic and therefore not within the contract. It said in effect, "Your disease is chronic and not subject to treatment under our contract, but come down and if we find it is not chronic we will treat you." No person in plaintiff's then condition would have gone after having been informed that if she had the sickness which she claimed to have had she would not be treated. Defendant claimed, then, claimed at the trial, and claims here that plaintiff was afflicted with a chronic disease which it was not required to treat, and it is plain that if she had gone to defendant after receiving this letter it would have declined to treat her. If the trouble was, in fact, a chronic one, defendant was justified; otherwise, its refusal was a breach of the contract which renders it liable in damages.

3. The evidence introduced as to the disease from which plaintiff was suffering indicates that in 1910 plaintiff suffered from prolapsus uteri, and that as a result of an operation she was completely cured of that trouble and was in sound health when she became a party to the contract with defendant; that this condition continued for about two and a half years; that later, when plaintiff did hard work or lift-

ing, she had temporary prolapsus, but that her condition always becomes normal upon ceasing such work. The effect of plaintiff's testimony is, that she has had frequent attacks or recurrences of the trouble at intervals, produced by overwork or lifting, but that the trouble is not continuous. The evidence on behalf of plaintiff indicates that she is much more susceptible to attacks of this character than the ordinary woman, but this fact alone does not render the disease chronic.

It is a fact well known even to laymen that there are persons whose bones are so brittle from disease or malnutrition, that they are broken by blows or falls which would do no particular injury to a person whose bones are normal; but it does not follow that such persons have chronic broken arms or legs. Some persons are poisoned by the slightest contact with poison ivy while others are not at all affected by it; but it does not follow that the susceptible person is afflicted with chronic ivy poisoning.

It appears here that plaintiff's first attack was cured in three weeks by an operation; that she remained in good health for over two years, and that subsequent attacks were cured by avoiding the causes which produced them. A chronic disease is one of long duration or characterized by slowly progressive symptoms: Section 2, Words & Phrases, "Chronic." Whether plaintiff's ailment was chronic was a question of fact for the jury, who were instructed in substance that the burden of proof was upon the plaintiff to show that she was not suffering from a chronic ailment.

4. The fact that plaintiff did not pay her assessment due on November 15th is immaterial, as Article X of the contract provides that "No cancellation

of Membership shall be made while the member is sick, or under treatment by the association, for any reasons."

5. It is urged the court erred in not giving the following instruction requested by defendant:

"You are further instructed that under the terms and conditions of the contract herein the defendant was not bound to render any services to the plaintiff outside of the City of Portland, Multnomah County, Oregon."

It is a forced construction of the contract to say that it requires defendant to render services in the City of Portland only. Article I of the contract stipulates for furnishing hospital services "where provided," by which we understand that such services were to be rendered only where the defendant had provided hospitals; but Article II provides for medical or surgical services by any one of the physicians of the association staff, and does not limit such services to a place where hospitals have been provided. Three things are promised the members of the association: (1) Free hospital service where a hospital is provided; (2) free medical treatment without any specification as to where it is to be rendered, and (3) free surgical treatment under the same conditions. In addition to this defendant had practically refused to treat plaintiff for prolapsus anywhere, and had unlawfully canceled its contract with her while she was sick, so it is in no position to claim immunity because plaintiff did not come to Portland to receive their refusal to treat her. Plaintiff's final demand was for treatment in Portland, coupled with an offer to come to Portland to be treated. Defendant's response was a refusal to treat her in Portland for the disease from which

she was suffering, coupled with a crafty invitation to come and be examined and treated, in case defendant found that she was afflicted with some different ailment than that from which she claimed to be suffering; and with the assumption that if she were suffering from 'the ailment described in her communication, she would not be entitled to the treatment stipulated in the contract.

The judgment of the Circuit Court is affirmed.

AFFIRMED.

BURNETT, BENSON and HARRIS, JJ., concur.

---

Denied April 27, 1920.

PETITION FOR REHEARING.

(189 Pac. 407.)

This is a petition for rehearing.

It is contended that the court failed to pass upon the question of the measure of damages argued in defendant's original brief, and in an able and plausible brief accompanying the petition for rehearing, defendant makes the point that a mere breach of the contract set forth in the complaint, even if unjustifiable, would not of itself authorize plaintiff to recover for physical pain and mental anguish, because, in addition to showing such breach, she would be required to show that she suffered physical pain as a consequence thereof, and not in consequence of the disease.

Defendant's argument is best stated in the following excerpts from the brief on petition for rehearing:

"I want to point out to the court that nowhere in the complaint is there an allegation to that effect and there is not one scintilla of evidence upon the point. Mrs. Coffey testified that she had suffered great pain, but it is clear that she suffered this pain, not because of the breach of the contract, but because of the trouble with which she was afflicted. No physician was placed on the stand to show that it was possible in any way to allay her suffering. In fact, it is clear from the testimony of Dr. Leonard that there was nothing that would have relieved the plaintiff outside of an operation, and that rest and lying in bed was the only treatment that could otherwise be administered.

"Assuming, further, for the sake of argument that the plaintiff has shown that the defendant breached the contract, the defendant should not, and could not legally be asked to respond in damages beyond an amount naturally flowing from the breach, and which is justified by the evidence. To permit a recovery on any other ground is a violation of all the established rules of law and evidence, and has the effect to judicially outlaw the appellant. We can see no reason why any different rule should apply in this case than in any other similar contract action."

REHEARING DENIED.

*Mr. C. D. Christensen,* for the petition.

*Mr. William P. Lord, contra.*

McBRIDE, C. J.—It may be conceded, for the purposes of this case, that in the absence of any evidence tending to show that plaintiff's sufferings were prolonged by defendant's breach of its contract, she would not be permitted to recover for physical pain resulting as a necessary consequence of the disease, irrespective of such breach. In other words, if plaintiff suffered to no greater extent than she would, had defendant promptly treated her,

then she can recover nothing for such physical pain. But that is not this case.

In spite of a very rigorous rule adopted by the court, in excluding testimony in regard to plaintiff's treatment in Eugene, there is evidence tending to show that upon being taken sick she promptly notified defendant by postal card, and received no answer; that thereupon she called in a local physician, who gave her two or three cursory treatments, found her unable to pay for said treatments, and turned her over to the county physician, who, after a treatment or two, discontinued his calls, for reasons which the court refused to permit to be shown, but which may reasonably be attributed to the fact that she had been in Lane County but six weeks and was therefore not a proper pauper charge upon the county. During this time she was asking the defendant for the treatment which she was entitled to but was not receiving. When in February, 1916, she managed in some way to get to Portland and obtain medical assistance, she was speedily relieved of much of her pain and suffering and substantially cured of her trouble.

6, 7. These facts were evidence from which a jury might infer, and almost necessarily would infer, that a prompt compliance by the association with the request of plaintiff for treatment would have saved her unnecessary suffering. So there is evidence that plaintiff suffered physical pain by reason of the nonperformance by defendant of its contract. And where this exists, a recovery for mental anguish concomitant with the physical pain suffered, is a proper element of plaintiff's damages.

The case cited by defendant's counsel, *Adams* v. *Brosius,* 69 Or. 513 (139 Pac. 729, 51 L. R. A. (N. S.) 36), does not even remotely sustain defendant's con-

tention. In that case the plaintiff Adams had called upon defendant Brosius to attend upon his wife, who was suffering from a hemorrhage, caused by a miscarriage, and was in a dangerous condition. Brosius accepted the call, and started on his journey to the home of the sick woman, but stopped on the way and failed to keep the engagement. The woman died from the hemorrhage, and her husband brought suit against the physician for damages, alleging, as the sole ground of recovery, the anguish caused by the failure of the defendant to attend as he had promised. There was no allegation that Mrs. Adams' death was caused by failure of the physician to attend, or that by his failure to do so her life was shortened or her sufferings were increased; the only injury complained of being the mental anguish of the husband caused by the breach of the physician's contract.

The case was reduced down to the proposition as to whether one could recover damages for mental anguish, caused by viewing the physical suffering of another, where such person had himself suffered no physical pain or damage. We held that he could not, but Justice McNARY added, by way of *dictum:*

"Had death not claimed her for its victim, plaintiff's wife possibly could have maintained an action against defendant for the mental anguish and physical pain, if any, which she sustained as a result of the broken contract, but for plaintiff no action is maintainable for purely mental distress."

This indicates that there was in the judicial mind in that case the distinction which we have endeavored to make here, between damages for an act causing mental anguish only, and one where such mental suffering is accompanied by physical pain.

In cases of this character the basis of the action is a contract, but an action for the breach of such

contract sounds in tort, and authorities are not lacking to the effect that in such actions damages for mental suffering are recoverabe. *Galveston etc. R. R. Co.* v. *Rubio* (Tex. Civ. App.), 65 S. W. 1126, is a case exactly in point with the one at bar. See, also, *Aaron* v. *Ward*, 203 N. Y. 351 (96 N. E. 736, 38 L. R. A. (N. S.) 204); *Austro-American S. S. Co.* v. *Thomas,* 248 Fed. 231, L. R. A. 1918D, 873, 160 C. C. A. 309).

Upon other features of defendant's contention in this case and holding adversely thereto, see *McDaniel* v. *United Rys. Co.,* 165 Mo. App. 678 (148 S. W. 464).

The general principle is well summed up in 3 Sutherland on Damages, Section 980, in the following language:

"The best reconsideration we have been able to give the subject of damages for mental injury, that reconsideration being had with the result of the cases decided since the original edition of this work was prepared in mind, confirms the conclusion then arrived at—given a cause of action on contract or for a tort, the allowance of damages on that account depends on the same rule by which they are allowed for any other resulting injury, namely, in an action *ex contractu* the injury to the feelings must be such as was presumably contemplated by the parties as likely to occur at the time it was made, if a breach resulted; and in an action of tort it must be the natural and proximate consequence of the wrong. In both cases the act or omission which constitutes the cause of action must in some way result in a deprivation of comfort, produce annoyance, personal inconvenience, wound the sensibilities by indignity or something like it, as distinguished from a sense of disappointment on being denied money due or a commodity for business purposes. The objections to the allowance of compensation for such injury are largely based upon reluctance to

opening to juries an inquiry as to an indefinite wrong for which there is no precise measure of reparation, thus making possible an award due to passion and prejudice. But when injury of this character is contemplated as likely to result from the breach of a contract the parties may, when they make their agreement, liquidate the damages; if they do not, the party at fault is not entitled to immunity merely because there is danger that a jury may require him to pay too much. This consideration is still more potent in tort actions."

8. We are of the opinion that the damages suffered here may be fairly said to have been within the contemplation of the parties when the contract was executed.

It is a well-known fact that as a rule these contracts are not entered into by the wealthy or well-to-do class of the community, but by that poorer class who seek thereby to provide themselves with medical or surgical assistance in case of sickness or accident, without resort to humiliating public or private charity. That a resort to such charity might result from a failure of defendant to keep its contract, was a contingency which would naturally be within the contemplation of both parties. That being compelled to resort to it for the meager assistance it usually affords would be a source of humiliation and mental anguish to a woman of average sensibilities, who for years had paid a monthly premium to avoid such a contingency, goes without saying.

The verdict and judgment were legally and morally right, and the former opinion is adhered to and the petition for rehearing denied.

AFFIRMED.    REHEARING DENIED.

BURNETT, HARRIS and BENSON, JJ., concur.