Argued and submitted May 2, the decision of the Court of Appeals and the judgment of
the circuit court affirmed November 8, 1990

## Keri L. KELTNER
### and Dorene L. Keltner,
*Petitioners on Review,*

*v.*

## WASHINGTON COUNTY
### and Oregon State Police,
*Respondents on Review.*

### (CC 86C-12287; CA A50235; SC S36909)

800 P2d 752

Elden M. Rosenthal, Portland, argued the cause for petitioners on review. With him on the petition were B. Carlton Grew and Rosenthal & Green, P.C., Portland.

I. Franklin Hunsaker, Portland, argued the cause for respondent on review Washington County. With him on the response were John M. Junkin, Washington County Counsel, Kevin M. Myles, Assistant County Counsel, and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent on review Oregon State Police. With him on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

James H. Clarke and Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

Before Peterson, Chief Justice, Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices, and Graber, Justice pro tempore.

VAN HOOMISSEN, J.

Unis, J., dissented and filed an opinion.

## VAN HOOMISSEN, J.

The issue in this case is whether this court should reconsider the general rule of law in Oregon that a plaintiff in an action for breach of contract may not recover damages for purely mental distress. *Farris v. U.S. Fid. and Guar. Co.,* 284 Or 453, 465, 587 P2d 1015 (1978); *Adams v. Brosius,* 69 Or 513, 139 P 729 (1914). We find no persuasive reason to reconsider the rule in this case. Accordingly, we affirm the decision of the Court of Appeals.

## FACTS

This case was decided on defendants' ORCP 21A(8) motions to dismiss for failure to state ultimate facts sufficient to constitute a claim. Those motions admit all the well-pleaded allegations of fact in plaintiffs' complaint. We therefore determine only whether those facts are sufficient to state a claim. *Fuhrer v. Gearhart By The Sea, Inc.,* 306 Or 434, 436, 760 P2d 874 (1988).

The following facts are alleged in plaintiffs' amended complaint: .

Plaintiff Keri Keltner, age 14, learned from another person the identity of the murderer of a nine-year-old child and the location of the murder weapon. Keri was not a witness to the crime. Keri wanted to give the information to the police, but she was reluctant to do so, because she feared retaliation by the murderer. A state police officer who was investigating the crime orally promised Keri that if she gave him her name, telephone number, and the information, the state police would not disclose her identity to the murderer. Relying on that assurance, Keri gave the officer her name, telephone number, and information about the crime, including the identity of the murderer, the location of the murder weapon, and the probable method of the murder. The state police thereafter gave that information to Washington County Sheriff's deputies, who were investigating the murder. Those deputies contacted Keri and her mother, plaintiff Dorene Keltner, to discuss Keri's information. Keri still was reluctant to talk because of her fear of retaliation. After the deputies orally promised her and her mother that they would not reveal Keri's identity to the murderer, Keri talked to them. Keri thereafter was identified as the informant in police reports that were given by the

prosecutor to the murderer's attorney, who disclosed Keri's identity to his client.

Plaintiffs filed this contract action against Washington County and the State of Oregon, seeking damages for "mental anguish" resulting from defendants' disclosure of Keri's identity. Plaintiffs' first claim was brought on behalf of Keri for breach of a contract of confidentiality; their second claim alleged that Keri's mother was a third party beneficiary of the agreement of confidentiality. Plaintiffs did not allege an intentional, reckless, or even negligent breach by defendants; nor did they allege any special relationship with defendants. Their complaint alleges only a breach of contract.

The trial court granted defendants' ORCP 21A(8) motions to dismiss plaintiffs' complaint for failure to state a claim, explaining:

> "[U]nder the allegations of plaintiffs' amended complaint, emotional distress damages are not recoverable in a breach of contract action * * *." (Emphasis added.)

The Court of Appeals affirmed:

> "Although the facts are compelling and numerous jurisdictions have cited the rule of the Restatement [(Second) of Contracts § 353 (1981)] with approval, we are bound by the holding of Farris v. U.S. Fid. and Guar. Co., [supra], that emotional distress damages are not recoverable in a contract action." Keltner v. Washington County, 100 Or App 27, 30, 784 P2d 127 (1989) (footnote omitted).

The court rejected plaintiffs' argument that dictum in Humphers v. First Interstate Bank, 298 Or 706, 710, 696 P2d 527 (1985), may have overruled this court's holding in Farris v. U.S. Fid. and Guar. Co., supra.

Plaintiffs contend that the Court of Appeals erred in affirming the trial court's judgment granting defendants' motions to dismiss plaintiffs' amended complaint. They concede that no Oregon authority directly supports their position. They rely primarily on this passage in Humphers v. First Interstate Bank, supra, 298 Or at 710:

> "A contract claim may be adequate where the breach of confidence causes financial loss, and it may gain a longer period of limitations; but contract law may deny damages for psychic or

emotional injury not within the contemplation of the contracting parties, *see Farris v. U.S. Fid. and Guar. Co., [supra], though perhaps there is no barrier when emotional security is the very object of the promised confidentiality.*" (Footnote omitted; emphasis added.)

They also rely on Restatement (Second) of Contracts § 353 (1981),[1] and on decisions by other courts which, plaintiffs assert, have cited that source with approval. Plaintiffs acknowledge that they have not been able to locate any case law that addresses a contract claim for purely emotional damages by a confidential informant against prosecuting attorneys or police.

■    The generally accepted rule is that contract damages will not be awarded for mental suffering only, not attendant to or followed by an injury to the plaintiff. *See* 5 Corbin, Contracts § 1076 (3d ed 1964); III Farnsworth, Contracts § 12.17 (1990); Williston, A Treatise on the Law of Contracts § 1341 (3d ed 1968). That rule is consistent with *Adams v. Brosius, supra,* this court's earliest relevant contract case. It also is consistent with Restatement of Contracts § 341 (1932),[2] which was cited with approval by this court in *Farris v. U.S. Fid. and Guar. Co., supra,* 284 Or at 456.[3]

## ANALYSIS

■    In a case such as this, in which a party proposes the reversal of a common-law rule, the initial question we ask is: Should this court even undertake to reconsider the rule in issue? Courts do not lightly overturn precedent, especially when the precedent has been followed for a long time. *See Noonan v. City of Portland,* 161 Or 213, 239-40, 88 P2d 808

---

[1] Restatement (Second) of Contracts § 353 (1981) provides:

"Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result."

[2] Restatement of Contracts § 341 (1932) provides:

"In actions for breach of contract, damages will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm and where it was the wanton or reckless breach of a contract to render a performance of such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss."

[3] We stated in *Farris* that, if the facts justify an action in tort, courts are inclined to allow for emotional distress as part of the damages flowing from a tort claim.

(1939) (courts ought not overrule announced controlling principles of law unless they are "manifestly wrong").[4]

In *G.L. v. Kaiser Foundation Hospitals, Inc.,* 306 Or 54, 59, 757 P2d 1347 (1988), this court summarized the rule concerning reconsideration of a court-created doctrine as follows:

> "Ordinarily this court reconsiders a nonstatutory rule or doctrine upon one of three premises: (1) that an earlier case was inadequately considered or wrong when it was decided; (2) that surrounding statutory law or regulations have altered some essential legal element assumed in the earlier case; or (3) that the earlier rule was grounded in and tailored to specific factual conditions, and that some essential factual assumptions of the rule have changed. Without some such premise, the court has no grounds to reverse a well-established rule besides judicial fashion or personal policy preference, which are not sufficient grounds for such a change." (Citations omitted.)

With that standard in mind, we proceed to review this court's previous decisions concerning an award of contract damages for purely emotional distress and the surrounding context to determine whether any of the *Kaiser Foundation* premises justifies reconsideration of the current rule.

In *Adams v. Brosius, supra,* the plaintiff sued a physician for mental anguish allegedly suffered because of an alleged breach of a contract for professional services that the physician was to provide to the plaintiff's wife. The complaint alleged that the plaintiff had employed the physician to care for the plaintiff's wife, that the physician had been summoned to treat the wife but had failed to arrive promptly, and that the wife died. The complaint did not allege that the physician's breach was responsible for, or in any way contributed to, the wife's physical injury or that the physician's performance of the contract would have reduced the wife's suffering or prolonged her life. The physician demurred on the ground that

---

[4] This court has not hesitated to change a common-law rule when we have concluded that a change was compelled. *See e.g., Heino v. Harper,* 306 Or 347, 759 P2d 253 (1988) (abolishing rule of interspousal immunity for negligent personal injury to a spouse); *Winn v. Gilroy,* 296 Or 718, 681 P2d 776 (1984) (abolishing rule of parental immunity for negligent personal injury to children); *Hungerford v. Portland Sanitarium & Benevolent Ass'n,* 235 Or 412, 384 P2d 1009 (1963) (abolishing charitable-immunity doctrine).

the complaint did not state a claim. The trial court sustained the demurrer. On appeal, this court affirmed, explaining:

"The doctrine that mental suffering accompanying personal injury or physical pain is always the subject of compensation is so firmly implanted in the jurisprudence of the several states of the Union as to become a legal maxim. *In most cases, however, the mental anguish should be connected with the bodily injury and be fairly and reasonably the natural consequence that flows from it, and damages for prospective mental anguish are not recoverable as being too speculative.*

"* * * * *

"Distressing as the situation must have been to plaintiff, it is impossible to see upon what rule of law he can claim damages for injury to his feelings. His mental anguish could only be from alarm and sympathy for his wife's sufferings; she was the direct sufferer which caused him anxiety and concern. We think *the sympathetic mental sufferings of plaintiff* on account of the suffering and pain of the wife, caused by defendant's failure to observe his professional contract, *are too remote and consequential to be actionable.* Indeed, it is the person who suffers the injuries proximately resulting from the wrong done, and such person alone, who is entitled to compensation, except in cases where death results and the cause of action is made to survive to relatives, or personal representatives by virtue of the statute. Had death not claimed her for its victim, plaintiff's wife possibly could have maintained an action against defendant for the mental anguish and physical pain, if any, which she sustained as a result of the broken contract, *but for plaintiff no action is maintainable for purely mental distress.*" *Adams v. Brosius, supra,* 69 Or at 517-18 (emphasis added; citations omitted).

Plaintiffs argue that the Court of Appeals' decision in this case is inconsistent with this court's holding in *Coffey v. Northwestern Hospital Assn.,* 96 Or 100, 183 P 762 (1919), *reh den* 189 P 407 (1920). We disagree. *Coffey* was an action for breach of contract to provide prepaid medical services. In that case, we upheld an award of emotional distress damages for breach of contract. However, there was evidence presented at trial that the plaintiff had suffered *physical pain* as a result of the defendant's breach of the parties' contract:

"[T]here is evidence tending to show that upon being taken sick [plaintiff] promptly notified defendant by postal card,

and received no answer; that thereupon she called in a local physician, who gave her two or three cursory treatments, found her unable to pay for said treatments, and turned her over to the county physician, who, after a treatment or two, discontinued his calls, for reasons which the court refused to permit to be shown, but which may reasonably be attributed to the fact that she had been in Lane County but six weeks and was therefore not a proper pauper charge upon the county. During this time she was asking the defendant for the treatment which she was entitled to but was not receiving. When in February, 1916, she managed in some way to get to Portland and obtain medical assistance, she was speedily relieved of much of her pain and suffering and substantially cured of her trouble.

"These facts were evidence from which a jury might infer, and almost necessarily would infer, that a prompt compliance by the association with the request of plaintiff for treatment would have saved her unnecessary suffering. *So there is evidence that plaintiff suffered physical pain by reason of the nonperformance by defendant of its contract.* And where this exists, a recovery for mental anguish concomitant with the physical pain suffered, is a proper element of plaintiff's damages." *Coffey v. Northwestern Hospital Assn., supra,* 96 Or at 115 (emphasis added).

This court distinguished *Adams v. Brosius, supra,* noting that *Adams* involved a claim for mental anguish only, *unaccompanied by physical pain:*

"This indicates that there was in the judicial mind in [*Adams v. Brosius*] the distinction which we have endeavored to make here, between damages for an act causing mental anguish only, and one where such mental suffering is accompanied by physical pain." *Coffey v. Northwestern Hospital Assn., supra,* 96 Or at 116.

*Farris v. U.S. Fid. and Guar. Co., supra,* was an action for contract damages claimed to have resulted from the defendant's denial of liability insurance coverage to its insureds. The plaintiffs recovered damages resulting from the defendant's failure to tender a defense on a third party's claim. Although this court affirmed the decision in plaintiffs' favor, we reversed the award to plaintiffs of contract damages for mental distress:

"[W]e believe defendant's failure to undertake representation of plaintiffs which required them to represent themselves

could only have been a breach of contract, and, *in cases of breach, the law is clear that no recovery for mental distress because of threat of pecuniary loss is recoverable.*

"Plaintiffs argue that one who enters into a contract of insurance does so to guarantee himself peace of mind in case an action or claim is made against him * * *. The argument does not furnish a logical basis for recovery for emotional distress because many contracts for services, materials or financial assistance, as well as insurance contracts, are similarly made for economic and financial peace of mind." *Farris v. U.S. Fid. and Guar. Co., supra,* 284 Or at 464-65 (emphasis added; footnote omitted).[5]

In *Humphers v. First Interstate Bank, supra,* an unmarried mother who had surrendered her newborn child for adoption sought damages from the doctor who had delivered the child, claiming that he had wrongly helped the child to identify and locate the mother. Humphers' complaint alleged five different theories: (1) intentional infliction of emotional distress; (2) behavior that fell short of the care, skill, and diligence employed by other physicians in the community and commanded by statute; (3) wrongful breach of a confidential or privileged relationship; (4) invasion of privacy; and (5) breach of a contract of secrecy. The circuit court dismissed Humphers' complaint.

The Court of Appeals affirmed in part and reversed in part, ruling that the mother could bring tort claims for breach of a confidential relationship and invasion of privacy, but that she could not obtain contract damages:

"[P]laintiff has only alleged mental distress damages, which are not recoverable in a breach of contract claim. *Farris v. U.S. Fid. and Guar. Co., [supra].*" *Humphers v. First Interstate Bank,* 68 Or App 573, 585, 684 P2d 581 (1984).

---

[5] Justice Lent, in dissent, would have upheld the award for emotional damages on his finding that defendant had acted in bad faith in refusing to perform under the contract. Justice Lent quoted from the court's earlier ruling in the same case:

"We conclude as a matter of policy that when there is an unaggravated breach, such as alleged in the complaint, damages are not awarded for mental anguish. We do not decide what the result would be if there was evidence of an aggravated breach; that is, one, for example, made in bad faith or otherwise." *Farris v. U.S. Fid. & Guar. Co.,* 284 Or 453, 470, 587 P2d 1015 (1978).

Justice Lent argued that the court had implicitly recognized that an emotional distress damages award might be appropriate where a breach was "aggravated," and he concluded that such a award was appropriate in that case. There is language in the majority opinion in *Farris* suggesting that although the majority considered defendant's breach to be "intentional," it may not have considered the breach to be "aggravated." *Farris v. U.S. Fid. and Guar. Co., supra,* 284 Or at 463.

On review, this court held that Humphers had no claim for invasion of privacy, but that she did have a claim for breach of a confidential relationship. As to Humphers' contract claim, this court stated in *dictum* that perhaps there is "no barrier [to contract damages for emotional injury] when emotional security is the very object of the promised confidentiality." *Humphers v. First Interstate Bank, supra,* 298 Or at 710. Notwithstanding that *dictum, Humphers* did not purport to overrule the rule stated in *Adams v. Brosius, supra.*

■ ■ Plaintiffs have failed to demonstrate affirmatively that our earlier relevant decisions were either "inadequately considered or [wrongly] decided." *G.L. v. Kaiser Foundation Hospitals, Inc., supra,* 306 Or at 59. Thus, they have failed to establish the first premise recognized in *Kaiser Foundation,* justifying this court's reconsideration of the rule in issue.

Likewise, plaintiffs have failed to demonstrate affirmatively "that surrounding statutory law or regulations have altered some essential legal element assumed in the earlier case[s]." *Id.,* 306 Or at 59. Thus, they have failed to establish the second premise recognized in *Kaiser Foundation,* justifying this court's reconsideration of the rule in issue.

Plaintiffs have not argued that the rule announced in our earlier decisions "was grounded in and tailored to specific factual conditions, and that some essential factual assumptions of the rule have changed." *Id.,* 306 Or at 59. Thus, they have failed to establish the third premise recognized in *Kaiser Foundation,* justifying this court's reconsideration of the rule in issue. In summary, none of the three premises recognized in *Kaiser Foundation,* is presented in this case.

Plaintiffs argue, however, that "enlightened" appellate courts have followed the Restatement (Second) Contracts, § 353 (1981), and that Oregon should do likewise because it is the "better" approach.[6] *Amicus* argues that

---

[6] Plaintiffs argue:

"Public policy and common sense require reversal. The plaintiffs expressly bargained for confidentiality because of their reasonable fears of reprisal from a murderer. The police agencies in question have breached their agreements, and may not now deny liability and responsibility for their breach. Sound considerations of public policy support the [Supreme] Court['s] enforcing the specific agreement alleged, and permitting emotional distress damages to flow from the breach. *No other practical means for enforcing contracts such as this one exists.*"

plaintiffs' "proposal to impose absolute liability for alleged emotional distress is based on 'free wheeling' policy considerations. *See Donaca v. Curry Co.,* 303 Or 30, 36, 734 P2d 1339 (1987)." Both of those arguments, however, go to the merits of the present rule and the different approach found in Restatement (Second) of Contracts § 353 (1981), a question that we expressly do not reach here.

## CONCLUSION

Because plaintiffs have failed to demonstrate affirmatively that any premise on which this court should appropriately reconsider the rule in issue is present in this case, this court has no grounds to reconsider the well-established rule that damages are not recoverable in contract for purely emotional distress. We therefore decline to do so.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**UNIS, J.,** dissenting.

I do not agree with the disposition of this case. We granted review to determine whether the common law rule that precludes damages for purely mental distress in an action for breach of contract should be modified, particularly "when emotional security is the very object of the promised confidentiality."[1] Yet, the majority declines to undertake reconsideration of that nonstatutory rule because of this court's self-

---

(Emphasis added.)

We are not asked in this case to consider whether plaintiffs could have stated a tort claim for intentional infliction of emotional distress based on a special relationship between the parties.

This court's admonition in *Norwest v. Presbyterian Intercommunity Hospital,* 293 Or 543, 551-53, 652 P2d 318 (1982), about the inherent limitations in a court's capacity to gauge the weight of competing societal interests dressed up as "policy" considerations (assuming a court's capacity accurately to identify such interests or considerations in the first place) takes on additional force when there already exists an Oregon common-law rule on the subject, so that the argument is over retention of the rule rather than its initial recognition. *Heino v. Harper, supra* n 4, 306 Or at 370-71.

[1] In *Humphers v. First Interstate Bank,* 298 Or 706, 710, 696 P2d 527 (1985), this court stated in *dictum* that "perhaps there is no barrier [to contract damages for purely emotional injury] when emotional security is the very object of the promised confidentiality."

imposed methodology of judicial restraint, which substantially limits its authority to change, modify or formulate common law. The court's self-imposed rule of judicial restraint rejects competing-policy methodology in judicial common law-making. For example, in *G.L. v. Kaiser Foundation Hospitals, Inc.,* 306 Or 54, 757 P2d 1347 (1988), the plaintiff argued that public policy justified imposing vicarious liability on a hospital for an employee's criminal act upon a patient-plaintiff. *Id.* at 56. This court, citing *Donaca v. Curry Co.,* 303 Or 30, 734 P2d 1339 (1987),[2] responded by rejecting the use of "policy" as a rationale for formulating common law. 306 Or at 58-59. Similarly, *Heino v. Harper,* 306 Or 347, 759 P2d 253 (1988), rejected the assessment of competing policy considerations as a method for decision making.

The majority in this case states that the proper approach for reconsideration of a court-made rule or doctrine is the three-premise methodology articulated in *G.L. v. Kaiser Foundation Hospitals, Inc., supra,* 306 Or at 59:

> " 'Ordinarily this court reconsiders a nonstatutory rule or doctrine upon one of three premises: (1) that an earlier case was inadequately considered or wrong when it was decided, * * *; (2) that surrounding statutory law or regulations have altered some essential legal element assumed in the earlier case, * * *; or (3) that the earlier rule was grounded in and tailored to specific factual conditions, and that some essential factual assumptions of the rule have changed. Without some such premise, the court has no grounds to reverse a well-established rule besides judicial fashion or personal policy preference, which are not sufficient grounds for such a change * * * ' "

310 Or at 505. Using that approach, the majority concludes that, because plaintiffs have failed to demonstrate affirmatively that any of the three premises is present, it has "no grounds to reconsider the * * * [common law] rule that damages are not recoverable in contract for purely emotional distress" and, therefore, "decline[s] to do so." *Id.*

---

[2] In *Donaca v. Curry Co.,* 303 Or 30, 35-36, 734 P2d 1339 (1987), this court disapproved of courts "that in the absence of statutory sources of public policy, * * * articulate and justify rules of law in terms of policy * * *, in other words, adopt a legislative mode of making policy rather than a judicial search for policy made by others or for the implications of existing principles."

This court has never explained the origin of this doctrine of judicial restraint that limits it in employing policy-premises that are not related to a legislative source, even if those policy-premises are sound, for justification for its decision. The effect of this court's present approach is that the existing common law of this state, which was court created, becomes nearly "set in stone," subject only to review under the three-premise methodology outlined in *G.L. v. Kaiser Foundation Hospitals, Inc., supra.* I believe that it is absolutely essential in the formulation of common law that relevant and crucial social data go into the calculus of decision making. The proper growth of the law demands it.

From the inception of common law, it has been the function of judges to make policy decisions. In *United States F. & G. Co. v. Bramwell,* 108 Or 261, 264-266, 217 P 332 (1923), this court observed that the Oregon Constitution expressly recognizes this court's role in the preservation of the common law system. The people of this state did not adopt the civil law system of codifying the entire body of law; rather, they adopted the common law method in which the judiciary formulates nonstatutory law. Obviously, in the process of formulating common law rules or doctrine, judges must weigh competing policy considerations.

Former Oregon Supreme Court Chief Justice Kenneth O'Connell has stated that "[this] court's rejection of judicial policy making could be the most significant, revolutionary, and startling pronouncement ever made by the Oregon Supreme Court throughout its history * * *." O'Connell, *Ruminations on Oregon Negligence Law,* 24 Willamette L Rev 385, 407 (1988).

I would jettison this court's self-imposed rule that precludes it from justifying rules of common law or doctrine in terms of policy. Abandonment of the present decision-making methodology employed by this court, which I advocate, does not mean that this court should ignore the doctrines of judicial restraint and stare decisis, which recognize the need for stability and predictability in the development of the law. The self-imposed rule of judicial restraint earns this court the dubious distinction of being the only state in the union to limit

its traditional judicial common law-making authority so substantially.[3]

For these reasons, I respectfully dissent.[4]

---

[3] My research has failed to disclose any state that has similarly limited its traditional judicial common law-making authority.

[4] I express no opinion on the merits of plaintiffs' claim.