Argued and submitted November 22, 1989, affirmed May 23, reconsideration denied
July 25, petition for review pending 1990

# HAMMOND,
*Appellant,*

*v.*

# CENTRAL LANE
# COMMUNICATIONS CENTER et al,
*Respondents.*

## (16-87-09193; CA A50155)

792 P2d 440

Ralph A. Bradley, Eugene, argued the cause for appellant. With him on the briefs was Bradley & Gordon, P.C., Eugene.

John B. Arnold, Eugene, argued the cause for respondents Central Lane Communications Center and City of Eugene. With him on the brief was Harrang, Long, Watkinson, Arnold & Laird, P.C., Eugene.

David B. Williams, Eugene, argued the cause for respondents Lane County, Oregon, and Lane County, Oregon Sheriff's Department. With him on the brief was Lane County Office of Legal Counsel, Eugene.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent Oregon State Police. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

## RICHARDSON, P. J.

Plaintiff appeals from the summary judgment for defendants in this action for "outrageous conduct" and for negligence.

On July 28, 1986, plaintiff found her husband lying on the kitchen floor in their home. She called 911, and the operator concluded from plaintiff's answers to his questions that the husband was probably dead. The operator told plaintiff, "We'll have someone there in just a couple minutes." The 911 system is operated by defendant Central Lane Communications Center (center), but it routes requests for services to other agencies rather than performing them itself. The center contacted defendant City of Eugene's Fire Department Dispatch Center and defendant Oregon State Police. However, the communications indicated that the person was probably dead. The Eugene Fire Department does not provide basic life response services to the unincorporated area where plaintiff lives. However, the state police are responsible for responding to calls that involve deceased persons in that area. Center personnel made follow-up contacts with the state police and were informed that a deputy of defendant sheriff's department was closer than the state police to the scene and would respond to the call. The deputy arrived at plaintiff's home approximately 45 minutes after she called the center. Plaintiff's husband was dead, and there was evidence that he died between the time of plaintiff's call and the time that the deputy sheriff arrived.

■     Plaintiff's first assignment ascribes error to the summary judgment on her claim alleging "outrageous conduct." She argues that defendants stood in a special relationship to her and that there was evidence of sufficiently culpable conduct on their parts to enable her claim to go to a factfinder. We disagree. There was no showing of any misconduct that could be found to be worse than negligent. That is not enough. *See Hall v. The May Dept. Stores,* 292 Or 131, 637 P2d 126 (1981).[1]

In addition to her argument based on defendants'

---

[1] We do not decide whether a special relationship existed between plaintiff and any of the defendants.

immediate conduct, plaintiff also supports her first assignment by contending that defendants had advertised and conducted educational programs that induced her to believe that a 911 call would result in the delivery of life response services to her home, when in fact such services were not furnished to the unincorporated area. However, no inference was possible that the harm in this case was caused by any systematic unavailability of services in the area of plaintiff's home. The timing and nature of the response to plaintiff's call resulted from its being treated as a "deceased person" call. That handling of the call entailed no misconduct on defendants' part that a fact finder could decide was more than negligent. We reject plaintiff's first assignment.

■     Plaintiff's second assignment challenges the summary judgment on her negligence claim. Plaintiff contends that, although her call was made to obtain emergency services for her husband, she rather than he

> "chose to use this service. In a contractual sense, Plaintiff * * * accepted the offer of emergency medical services made by the 9-1-1 service."

Accordingly, she argues, she was a "direct victim" of defendants' negligence and suffered emotional distress and somatic complaints.

■     We rejected similar arguments in *Doe v. Portland Health Centers, Inc.,* 99 Or App 423, 782 P2d 446 (1989), *rev allowed* 309 Or 333 (1990), and *Heusser v. Jackson County Health Dept.,* 92 Or App 156, 757 P2d 1363 (1988), *rev den* 307 Or 326 (1989); *see also Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 652 P2d 318 (1982). As in those cases, the direct victim of the negligence here was plaintiff's relative, and a claim for plaintiff's emotional distress is not available. The fact that plaintiff rather than her husband made the telephone call does not alter the fact that he was the victim of any negligent failure by defendants to respond on his behalf. Plaintiff seeks to distinguish this case from *Heusser* by noting that, there, the plaintiff's relatives sustained no injury on which *they* could base an action arising out of the events that caused the plaintiff's emotional distress. Here, conversely, plaintiff asserts that there was an injury to her husband on which his personal representative might base a wrongful death action. Plaintiff concludes, therefore, that

"none of the reasons for denying 'direct victim' status [to her] exist." We disagree. The fact that a plaintiff's relative was directly injured and has a direct right of action surely does not mean, *ipso facto,* that the plaintiff also becomes a direct victim and enjoys a right of action for his or her derivative emotional distress. *Heusser v. Jackson County Health Dept., supra,* does not so suggest, and *Doe v. Portland Health Centers, Inc., supra,* and *Horwell v. Oregon Episcopal School,* 100 Or App 571, 787 P2d 502 (1990), are clearly to the contrary.

We have considered and we reject the remaining arguments of plaintiff that are not discussed in this opinion.

Affirmed.

**NEWMAN, J.,** concurring.

I concur in the majority opinion with respect to plaintiff's negligence claim.

I also concur in the result on plaintiff's claim for "outrageous conduct." The majority, however, asserts that no inference was possible that the harm resulted from "any systematic unavailability of [emergency medical] services in the area of plaintiff's home," 101 Or App at 572, but that the harm was simply caused by defendants' treatment of plaintiff's call as a "deceased person" call. It then asserts that a factfinder could not find that defendants' conduct was worse than negligent. The majority, therefore, does not correctly describe what a factfinder could find was defendants' conduct and does not address plaintiff's actual arguments.

Plaintiff asserts that a factfinder could infer that she had seen and heard defendants' advertising, which advised her that emergency medical services would be delivered to her residence if she called 911, and that the advertising did not state that those services were not available to the unincorporated areas of Lane County. Accordingly, plaintiff asserts that, because the operator informed her over the telephone, in response to her 911 call, that, "We'll have someone there in just a couple minutes," a factfinder could infer that defendants had advised plaintiff that, within a "couple minutes," emergency medical services would be delivered to her residence. I agree that a factfinder could infer that defendants' misconduct in this case consisted of, not only the treatment of

plaintiff's call as a "deceased person" call, but also the misleading advertising and the promise over the telephone of immediate assistance.

Nonetheless, a factfinder could *not* find that defendants' conduct was undertaken with intent to cause plaintiff severe emotional distress. Furthermore, there was nothing "special" in the relationship between defendants and *plaintiff* that would allow a lesser degree of culpability to suffice. *See Torgeson v. Connor,* 86 Or App 179, 738 P2d 994 (1987). Defendants, therefore, were entitled to summary judgment on plaintiff's claim for "outrageous conduct."