Argued and submitted January 22, the decision of the Court of Appeals and the judgment of the circuit court affirmed August 22, 1991

Mary HAMMOND,
*Petitioner on Review,*

*v.*

CENTRAL LANE
COMMUNICATIONS CENTER;
City of Eugene; Lane County Oregon;
Oregon State Police;
Lane County Sheriff's Department
and Various Unnamed Employees of the Above,
*Respondents on Review.*

(CC 16-87-09193; CA A50155; SC S37277)

816 P2d 593

Ralph A. Bradley, Eugene, argued the cause for petitioner on review. With him on the petition was Bradley & Gordon, P.C., Eugene.

John B. Arnold, Eugene, argued the cause for respondents on review Central Lane Communications Center and City of Eugene. With him on the response was Harrang, Long, Watkinson, Arnold & Laird, P.C., Eugene.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent on review Oregon State Police. With him on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

David B. Williams, Assistant County Counsel, Eugene, argued the cause for respondents on review Lane County and Lane County Sheriff's Department. With him on the response was Lane County Office of Legal Counsel, Eugene.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is a tort action for damages based on theories of negligent and reckless infliction of severe emotional distress. Plaintiff alleges that she sustained psychic and emotional injuries as a result of the manner in which defendants responded to a 9-1-1 call that she made concerning her husband and as a result of the manner in which defendants designed the Lane County 9-1-1 emergency telephone system. The trial court granted defendants' motions for summary judgment. ORCP 47.[1] The Court of Appeals affirmed. *Hammond v. Central Lane Communications Center,* 101 Or App 569, 792 P2d 440 (1990). Because plaintiff suffered no physical injury from defendants' alleged negligence and because she has not shown that defendants' conduct was anything more than negligent, we also affirm.

We view the record in the light most favorable to plaintiff, the party opposing defendants' summary judgment motions. *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978).

Plaintiff awoke to find her 67-year-old husband, who suffered from congestive heart failure, lying on the kitchen floor. He was not breathing, had no apparent pulse, was cold to the touch, and was bluish in color.

Plaintiff dialed 9-1-1. She spoke to a 9-1-1 operator, who asked her questions about the nature of the emergency. At the operator's request, plaintiff checked to see if her husband was breathing. He was not. The operator asked plaintiff to try to find a pulse. She found none. On the basis of the information provided by plaintiff, the operator concluded that plaintiff's husband was dead from natural causes. The operator told plaintiff that someone would be at her house "in just a couple of minutes." During the time plaintiff waited for help to arrive, her husband made "rasping breathing sounds."

---

[1] ORCP 47 C provides in part:

"[Summary judgment] * * * shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

An electronic message, reporting information from plaintiff's call and the 9-1-1 operator's assessment of the nature of the call, was immediately dispatched via computer to the Eugene Fire Department's Dispatch Center and to the Oregon State Police (OSP).[2] Because plaintiff's call originated from an unincorporated area of the county and indicated that plaintiff's husband was dead from natural causes, OSP was the agency responsible for responding to the call. Central Lane Communications Center (CLCC) personnel who made follow-up calls to OSP were told that no state trooper was available to respond immediately to a call of a non-emergency nature, that a deputy sheriff would soon be available and, therefore, that a deputy would respond to plaintiff's call. The deputy, who also was advised that this was a "deceased person" call, arrived at plaintiff's house about 45 minutes after plaintiff called 9-1-1 and found plaintiff's husband dead. Between plaintiff's 9-1-1 call and the arrival of the deputy at her house, plaintiff's son-in-law called 9-1-1 to inquire when an ambulance would be arriving. He indicated to the 9-1-1 operator that plaintiff's husband was, in fact, dead.

Plaintiff's complaint first alleges that defendants were negligent in the following particulars: in treating her call as a "deceased person" call; in advertising that, if she called 9-1-1, emergency medical services would be delivered to her home, when, in fact, defendants knew that, because of a defect in the original design of the 9-1-1 system, such services would never have been sent to the unincorporated area where she lived; in failing to provide those services as advertised; in misleading her to believe that those services would be provided "in just a couple of minutes," when defendants knew that those services would not be provided to the unincorporated area where she lived; and in failing to ensure that those services were provided as advertised. Plaintiff's complaint

---

[2] Defendant Central Lane Communications Center (CLCC) operates the 9-1-1 Telephone Answering and Call Routing Service. CLCC itself does not physically respond to calls. Rather, it routes calls via computer to responding agencies according to the nature and location of the call. Those agencies include defendants county sheriff and various city fire and police departments and the state police. When calls of a medical nature are received, the CLCC operator utilizes an emergency medical dispatch priority card system to ensure that appropriate questions are asked and to identify pre-arrival care information.

next alleges that defendants' conduct was "extreme and outrageous" and reckless.[3]

In granting defendants' motions for summary judgment, the trial court held that plaintiff had no claim against defendants for negligence, because plaintiff was not a "direct victim" of defendants' alleged negligence, and that plaintiff has no claim against defendants for reckless infliction of severe emotional distress, because defendants' handling of plaintiff's call entailed no misconduct that a trier of fact could find was more than negligent. The Court of Appeals affirmed.

*Negligent Infliction of Severe Emotional Distress*

Plaintiff first contends that the trial court erred in sustaining defendants' motions for summary judgment on her claim for negligent infliction of severe emotional distress.

This court has recognized common law liability for psychic injury alone in three situations. First, where the defendant intended to inflict severe emotional distress. *See Patton v. J. C. Penney Co.,* 301 Or 117, 122, 719 P2d 854 (1986) (ordinarily a plaintiff must allege that a defendant intended to inflict severe mental or emotional distress); *Brewer v. Erwin,* 287 Or 435, 454-58, 600 P2d 398 (1979) (evidence sufficient to go to jury on theory that defendant engaged in abusive conduct intended to frighten or distress plaintiff); *Turman v. Central Billing Bureau,* 279 Or 443, 445-49, 568 P2d 1382 (1977) (evidence of extreme and outrageous conduct sufficient). Second, where the defendant intended to do the painful act with knowledge that it will cause grave distress, when the defendant's position in relation to the plaintiff involves some responsibility aside from the tort itself. *Hall v. The May Dept. Stores Co.,* 292 Or 131, 135-37, 637 P2d 126 (1981) (evidence sufficient to support verdict for employee against employer under theory of intentional infliction of emotional distress); *Brewer v. Erwin, supra,* 287 Or at 457 (evidence sufficient to go to jury on plaintiff's theory that defendants engaged in abusive conduct

---

[3] This court has disapproved of the label "outrageous conduct," preferring the phrase "intentional infliction of severe emotional distress." *Patton v. J. C. Penney Co.,* 301 Or 117, 119 n 1, 719 P2d 854 (1986); *Humphers v. First Interstate Bank,* 298 Or 706, 709 n 1, 696 P2d 527 (1985). In this case, the appropriate labels are, respectively, "negligent infliction of severe emotional distress" and "reckless infliction of severe emotional distress."

deliberately designed to frighten or otherwise distress plaintiff). Third, where the defendant's conduct infringed on some legally protected interest apart from causing the claimed distress, even when that conduct was only negligent. *See Nearing v. Weaver,* 295 Or 702, 706, 670 P2d 137 (1983) (recognizing that Oregon law allows recovery of damages for psychic or emotional harm when defendant's conduct infringes some legal right of the plaintiff independent of an ordinary tort claim for negligence); *McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977) (negligent delivery of passport, in violation of a court order, resulting in removal of plaintiff's child).[4] However, in *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 558-59, 652 P2d 318 (1982), this court explained:

> "This court has recognized common law liability for psychic injury alone when defendant's conduct was either intentional or equivalently reckless of another's feelings in a responsible relationship, or when it infringed some legally protected interest apart from causing the claimed distress, even when only negligently. * * * But we have not yet extended liability for ordinary negligence to solely psychic or emotional injury not accompanying any actual or threatened physical harm or any injury to another legally protected interest." (Footnotes and citations omitted.)

Further, the court stated that:

> "ordinarily negligence as a legal source of liability gives rise only to an obligation to compensate the person immediately injured, not anyone who predictably suffers loss in consequence of that injury, unless liability for that person's consequential loss has a legal source besides its foreseeability." 293 Or at 569.

*See Nearing v. Weaver, supra,* 295 Or at 708 (no recovery for psychic loss caused by physical injury to another person); *see*

---

[4] Plaintiff's reliance on *McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977), is misplaced. In *McEvoy,* the plaintiff husband brought an action for malpractice and negligence against his former wife's attorney. The attorney had violated a court order by returning passports to the former wife without first requiring the return of the parties' child, whom the former wife then took out of the country, depriving the plaintiff of the child over whom he had custody. A demurrer to the complaint was sustained, and the plaintiff appealed. This court reversed, holding that the complaint stated a claim for negligence because the defendant's conduct infringed on the plaintiff's known legal right. 277 Or at 789. In the present case, plaintiff has not shown on summary judgment that defendants' conduct infringed on any legally protected interests of hers.

*also Heusser v. Jackson County Health Dept.*, 92 Or App 156, 757 P2d 1363 (1988), *rev den* 307 Or 326 (1989) (no recovery where plaintiff sustained no impact); *Saechao v. Matsakoun*, 78 Or App 340, 341 n 1, 348, 717 P2d 165, *rev dismissed* 302 Or 155 (1986) (same).[5]

Plaintiff asserts, however, that she,

"not her husband - chose to use this service. In a contractual sense, [she] accepted the offer of emergency medical services made by the 9-1-1 service. The failure of the 9-1-1 system directly affected her since it was she who contracted for the service, and it was 9-1-1 that promised [her] they would 'have someone there in just a couple of minutes * * *.' "

Thus, she argues, she was the direct victim of defendants' negligence.

■ In her briefs and oral arguments, plaintiff refers repeatedly to her "oral contract" with defendant. However, this is not a claim for breach of contract. Plaintiff brought this claim in tort based on theories of negligent and reckless infliction of severe emotional distress, and she may not now be heard to argue instead that her claim is based on a contract. Moreover, *even if* we were to find that plaintiff's evidence showed a contract with defendants, her claim is for psychic or emotional injury only. That fact would preclude her recovery on a contract theory because, as we have recently reaffirmed, damages are not recoverable in contract for purely psychic or emotional injury. *Keltner v. Washington County*, 310 Or 499, 504, 800 P2d 752 (1990); *see Adams v. Brosius*, 69 Or 513, 139 P 729 (1914).

Plaintiff also argues that *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987), suggests that she can recover for emotional distress as a direct victim if her distress was a foreseeable consequence of a negligent injury to her husband. Although foreseeability is a prerequisite to liability, plaintiff must first point to some "legally protected interest" of hers that defendants violated. 303 Or at 17. She has not done so.

---

[5] For a thorough discussion of the impact rule, see 3 Harper, James and Gray, The Law of Torts 681, § 18.4 (1986); Prosser and Keeton, The Law of Torts 359, § 54 (5th ed 1984).

■ *Norwest v. Presbyterian Intercommunity Hosp.,* *supra,* 293 Or at 569, teaches that, although emotional injury to a bystander may be foreseeable, the bystander's emotional well-being is not a legally protected interest unless liability for the injury "has a legal source besides its foreseeability." Here, plaintiff points to no legal source of liability for her emotional injury other than its foreseeability. *See Donaca v. Curry Co.,* 303 Or 30, 32-33, 734 P2d 1339 (1987) (more than mere foreseeability of harm required for liability). Viewing the record in the light most favorable to plaintiff, we conclude that plaintiff may not recover for defendants' alleged negligence, because she sustained no physical injury. *Norwest v. Presbyterian Intercommunity Hosp., supra.*

In the alternative, plaintiff asks us to abandon the impact rule and to recognize the tort in this case in line with Restatement (Second) of Torts § 436 (1965),[6] which permits recovery:

"(1) If the actor's conduct is negligent as violating a duty of care designed to protect another from a fright or other emotional disturbance which the actor should recognize as involving an unreasonable risk of bodily harm, the fact that the harm results solely through the internal operation of the fright or other emotional disturbance does not protect the actor from liability.

"(2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

"(3) The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his immediate family occurring in his presence."

---

[6] *Pakos v. Clark,* 253 Or 113, 122-25, 453 P2d 682 (1969), assumed the plaintiff's premise, which the defendant did not question, that the characteristics of the tort of intentional infliction of emotional distress were those described in 1 Restatement (Second) of Torts § 46, *comment e* (1965), which permits recovery based on reckless conduct. In *Pakos,* however, the court found insufficient outrageous conduct and denied recovery, thus not adopting section 46 as Oregon law. *Rockhill v. Pollard,* 259 Or 54, 55, 485 P2d 28 (1971), proceeded on the premise that *Pakos v. Clark* had recognized the tort as defined in the Restatement (Second) of Torts. Nonetheless, this court has never expressly so held.

For the reasons that follow, we decline plaintiff's invitation.

■ This court will not lightly overturn precedent, especially when the precedent has been followed for a long time. *Keltner v. Washington County, supra,* 310 Or at 504; *see G.L. v. Kaiser Foundation Hospitals, Inc.,* 306 Or 54, 59, 757 P2d 1347 (1988) (neither judicial fashion nor personal policy preference is a sufficient ground for reversing a well-established rule); *Norwest v. Presbyterian Intercommunity Hosp., supra,* 293 Or at 547 (policy reasoning may not be resorted to as a basis for judicial justification); *Noonan v. City of Portland,* 161 Or 213, 239-40, 88 P2d 808 (1939) (courts should not overrule announced controlling principles of law unless they are "manifestly wrong").[7] In *G.L. v. Kaiser Foundation Hospitals, Inc., supra,* 306 Or at 59, this court stated:

"Ordinarily this court reconsiders a nonstatutory rule or doctrine upon one of three premises: (1) that an earlier case was inadequately considered or wrong when it was decided; (2) that surrounding statutory law or regulations have altered some essential legal element assumed in the earlier case; or (3) that the earlier rule was grounded in and tailored to specific factual conditions, and that some essential factual assumptions of the rule have changed. Without some such premise, the court has no grounds to reverse a well-established rule besides judicial fashion or personal policy preference, which are not sufficient grounds for such a change." (Citations omitted.)[8]

---

[7] This court has changed common law rules from time to time. *See, e.g., Heino v. Harper,* 306 Or 347, 759 P2d 253 (1988) (abolishing rule of interspousal immunity for negligent personal injury to a spouse); *Winn v. Gilroy,* 296 Or 718, 681 P2d 776 (1984) (abolishing rule of general parental immunity for negligent personal injury to children); *Hungerford v. Portland Sanitarium & Benevolent Ass'n,* 235 Or 412, 384 P2d 1009 (1963) (abolishing charitable immunity doctrine).

[8] We noted in *Keltner v. Washington County,* 310 Or 499, 510 n 6, 800 P2d 572 (1990), that this court's admonition in *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 551-53, 652 P2d 318 (1982), about the inherent limitations in a court's capacity to gauge the weight of competing societal interests dressed up as "policy" considerations (assuming a court's capacity accurately to identify such interests or considerations in the first place) takes on additional force when there already exists an Oregon common law rule on the subject, so that the argument is over retention of the rule rather than its initial recognition. *See also Heino v. Harper, supra* note 7, 306 Or at 370-71 (same).

Plaintiff has failed to demonstrate affirmatively that any of the three premises recognized in *Kaiser Foundation Hospitals* justifies this court's reconsideration of the impact rule in this case. Under such circumstances, and in the absence of any other special considerations, we decline to undertake a reconsideration of that rule.

### Reckless Infliction of Severe Emotional Distress

Plaintiff next contends that the trial court erred in sustaining defendants' motions for summary judgment on her claim for reckless infliction of severe emotional distress.

■■ A plaintiff may recover for severe emotional distress without accompanying physical injury by showing recklessness or a reduced level of intent, *i.e.,* "the intent to do the painful act with knowledge that it will cause grave distress, when the defendant's position in relation to the plaintiff involves some responsibility aside from the tort itself." *Hall v. The May Dept. Stores, supra,* 292 Or at 135. Such a responsibility generally constitutes a "special relationship" between the parties or the violation of a legally protected interest or known legal right. *Ibid.*

■ Plaintiff argues that she and defendants were in a "special relationship," because defendants held themselves out as providers or insurers of the prompt delivery of emergency medical services and because of her old age and her emotional strain on finding her husband lying on the kitchen floor, and that defendants owed her an independent legal right or duty arising out of ORS 401.710 *et seq* (providing for 9-1-1 emergency telephone systems). Therefore, she argues, she need only show that defendants acted "recklessly" to support her claim.

We need not determine whether plaintiff had a "special relationship" with defendants, or whether defendants owed plaintiff an independent legal right or duty arising out of ORS 401.710 *et seq,* because we conclude, as did the Court of Appeals, that plaintiff has not shown that defendants' conduct was anything more than negligent. Plaintiff presented no evidence on summary judgment from which a reasonable trier of fact could conclude that defendants' conduct constituted an "extraordinary transgression of the bounds of socially tolerable conduct." *Hall v. The May Dept.*

*Stores, supra,* 292 Or at 135. Thus, plaintiff may not recover on her claim for reckless infliction of severe emotional distress under either her "response" theory or her "design defect" theory. The record on summary judgment discloses no genuine issue as to any material fact, and defendants are entitled to judgment as a matter of law.

In summary, plaintiff may not recover under a theory of negligent infliction of emotional distress, because she suffered no physical injury from defendants' alleged negligence. *Norwest v. Presbyterian Intercommunity Hosp., supra.* Plaintiff may not recover under a theory of reckless infliction of severe emotional distress, because she has not shown any misconduct on defendants' part that a trier of fact could find was anything more than negligent. *Hall v. The May Dept. Stores, supra.* Therefore, the trial court properly granted defendants' motions for summary judgment.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**UNIS, J.,** concurring in part and dissenting in part.

I agree with the majority's conclusion that the trial court properly granted defendant's motion for summary judgment on plaintiff's claim for reckless infliction of severe emotional distress. I also agree with the majority that *present* Oregon common law does not recognize negligent infliction of severe emotional distress as an independent cause of action. I disagree, however, with the majority's disposition of plaintiff's claim for negligent infliction of severe emotional distress. This court exercised its discretionary power to grant review in this case to determine whether to extend common law tort liability to protect Oregon citizens from negligently inflicted severe emotional distress, without any accompanying actual or threatened physical harm or any injury to another legally protected interest. Yet, today this court declines to determine that issue, because it continues to believe that its common law authority to create or recognize new rules of law based on policy is dependent on an affirmative showing on the record of one or more of three premises set forth in *G.L. v. Kaiser Foundation Hospitals, Inc.,* 306 Or 54, 59, 757 P2d 1347 (1988). 312 Or at 26.

I explained in my dissent in *Keltner v. Washington County,* 310 Or 499, 510-13, 800 P2d 752 (1990) (Unis, J., dissenting), my deep belief that this court should remove itself from its self-imposed "shackles" of the three-premise approach of *G.L. v. Kaiser Foundation Hospitals, Inc., supra.* That approach rejects competing policy methodology in judicial lawmaking and thereby restricts this court's common law authority to articulate and justify rules of law based on policy. There is no need to repeat that discussion here. A recent article by former Chief Justice Kenneth J. O'Connell persuasively explains why this "court's edict of judicial restraint cannot be justified upon either pragmatic or theoretical grounds, and that the court's adherence to its own proscription will tend not only to distort its opinions but, if strictly applied, also to vitiate the common-law tradition of judicial lawmaking." O'Connell, *Oregon's Common-Law Tradition: An Endangered Species,* 27 Willamette L Rev 197 (1991). *See also* Note, *Oregon's Hostility to Policy Arguments: Heino v. Harper and the Abolition of Interspousal Immunity,* 68 Or L Rev 197 (1989).

From the vesting of power in this court on August 14, 1848,[1] until the last decade — over 130 years — this court recognized and exercised its authority to formulate common law rules or doctrine. In *Nees v. Hocks,* 272 Or 210, 215, 536 P2d 512 (1975), in which the common law tort of wrongful discharge was created, Justice Denecke, speaking for a unanimous court, said:

> "This court has not felt unduly restricted by the boundaries of pre-existing common-law remedies. We have not hesitated to create or recognize new torts when confronted with conduct causing injuries which we feel should be compensable."

*See also Hinish v. Meier & Frank Co.,* 166 Or 482, 113 P2d 438, 138 ALR 1 (1941) (court unanimously recognized a cause of action for damages suffered due to an intentional invasion of the plaintiff's right of privacy); *Pakos v. Clark,* 253 Or 113, 453 P2d 682 (1969) (tort of "outrageous conduct" (*i.e.,* intentional infliction of emotional distress[2]) recognized).

---

[1] *See* An Act in Relation to the Judiciary, Act of Congress August 14, 1848, 1 Or 7.

[2] As the majority states: "This court has disapproved the label 'outrageous conduct,' preferring the phrase 'intentional infliction of severe emotional distress.'

This court affirms a person's right to be free from severe emotional distress by recognizing (through its exercise of its common law authority to create or recognize new torts) the common law tort of intentional infliction of severe emotional distress, *see, e.g. Patton v. J. C. Penney Co., Inc.,* 301 Or 117, 122-24, 719 P2d 854 (1986); *Hall v. May Dept. Stores Co.,* 292 Or 131, 637 P2d 126 (1981); the tort of reckless infliction of severe emotional distress under certain circumstances, *see Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 569, 652 P2d 318 (1982); and the award of damages in connection with some other established tort.[3]

A growing number of jurisdictions in the United States recognize and protect a person's right to be free from negligently inflicted severe emotional distress without requiring either physical injury or an independent underlying tort. Keeton, Dobbs, Keeton & Owen, Prosser and Keeton on Torts 365, § 54 (5th ed 1984). I believe that this court should join those jurisdictions and recognize negligent infliction of severe emotional distress as an independent cause of action. In my view, psychic well-being is entitled to as much legal protection as physical well-being. The right to be free from severe emotional distress should not depend on whether the distress was intentionally, recklessly or negligently inflicted. Under present Oregon law, we allow a finder of fact to judge the validity of a claim for intentional infliction of severe emotional distress. The finder of fact does so by evaluating the quality and genuineness of proof and by relying on modern medical technology for proof of the cause, severity of the emotional distress, and the ability of the court and jury to weed out dishonest claims. Yet, we do not allow a factfinder to make such a resolution if the severe emotional distress is negligently inflicted, unless the emotional injury is accompanied by an actual or threatened physical harm or an injury to another legally protected interest.

Fear of imaginary or false claims is often cited as a primary reason for the "physical injury" requirement.

*Patton v. J. C. Penney Co., Inc.,* 301 Or 117, 119, 719 P2d 854 (1986); *Humphers v. First Interstate Bank of Oregon,* 298 Or 706, 709 n 1, 696 P2d 527 (1985)." 312 Or at 22 n 3.

[3] For example, once the underlying cause of action for invasion of right of privacy is established, damages for mental suffering may be awarded.

*See* Restatement (Second) of Torts § 436A, comment b (1965). Apart from some quite untenable notions of causal connection, the theory appears to be that the "bodily injury" affords the desired guarantee that the mental disturbance is genuine. Keeton, Dobbs, Keeton & Owen, *supra,* at 363-64, § 54. The distinction between physical and psychological injury, however, is artificial and arbitrary. One can imagine readily the harsh and arbitrary effects of the "physical injury" requirement. If an automobile careens off the road as a result of the negligence of its driver and by barely missing a party causes that party to suffer a severe psychological trauma, there would be no recovery under present Oregon law. If the side mirror of that same automobile brushed the party's arm, slightly scratching the skin, the party could then recover damages.

Another stated reason for the "physical injury" requirement is the concern that allowing recovery for solely emotional injury would result in an avalanche of new litigation. There is a two-fold response to this argument. First, there is insufficient proof that such a result has occurred in jurisdictions that have abandoned the "physical injury" rule. Second, it is a fundamental concept of our judicial system that a judicial forum be available for vindication of citizens' rights.

As stated by Keeton, Dobbs, Keeton & Owen, *supra,* at 360, § 54:

> "Mental suffering is no more difficult to estimate in financial terms, and no less a real injury, than 'physical pain'; it is not an independent intervening cause, but a thing brought about by the defendant's negligence itself, and its consequences may follow in unbroken sequence from that negligence; and while it may be true that its consequences are seldom very serious unless there is some predisposing physical condition, the law is not for the protection of the physically sound alone. It is the business of the courts to make precedent where a wrong calls for redress, even if lawsuits must be multipled; and there long has been precedent enough, and no great increase in litigation has been observed."

The requirement that a plaintiff must prove that he or she suffered *severe* emotional distress provides a level of protection from imaginary or false claims. Another alternative to protect against unfounded claims would be to require

the plaintiff to prove the element of *severe* emotional distress by *clear and convincing* evidence.

For these reasons, I respectfully dissent.[4]

---

[4] In light of the majority's present determined and — in my view — inappropriate restraint of its common-law judicial lawmaking authority, a litigant, advocating a new common law remedy (nonstatutory rule or doctrine) or a modification thereof, is well advised to demonstrate affirmatively on the record one or more of the three premises recognized by *G.L. v. Kaiser Foundation Hospitals, Inc.,* 306 Or 54, 59, 757 P2d 1347 (1988), as justifying this court's reconsideration of the proposed remedy or proposed modification.