Ronda K. MEAGHER and Elizabeth Moore, Plaintiffs,

v.

LAMB–WESTON, INC., a Delaware corporation, Defendant.

No. CV 92–216–JE.

United States District Court, D. Oregon.

Feb. 16, 1993.

Opinion on Reconsideration June 1, 1993.

---

1404

Richard C. Busse, Portland, OR, for plaintiffs.

Gordon L. Osaka and Janet C. Knapp, Portland, OR, for defendant.

## OPINION

PANNER, District Judge.

■ Magistrate Judge Jelderks filed his Findings and Recommendation on November 2, 1992. The magistrate recommended I deny defendant's motion for partial summary judgment on plaintiff's claim for intentional infliction of emotional distress ("IIED"), but grant defendant's motion to strike plaintiff's demand for punitive damages on the IIED claim. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R.Civ.P. 72(b). Plaintiff has timely objected. When either party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* review of that portion of the Magistrate's report. 28 U.S.C. § 636(b)(1)(C); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). The district court must also review *de novo* the legal principles in the entire report, not just the part objected to. *See Britt v. Simi Valley Unified School Dist.,* 708 F.2d 452, 454 (9th Cir.1983).

I decline to adopt the Magistrate's Findings and Recommendation. Instead, I grant defendant's motion for partial summary judgment on the IIED claim. The demand for punitive damages is now moot.

## BACKGROUND

Plaintiffs Meagher and Moore were employees of defendant's food processing facility in Hermiston. Both commenced working for defendant in 1973. Meagher resigned in July, 1992. Moore is still employed there. Roger Krug was employed by defendant since 1970, first at its Quincy plant and later at its Connell and Richland facilities. Throughout his employment at Lamb–Weston, Krug displayed a penchant for telling off-color jokes, commenting on the attributes of female employees or his own perceived sexual prowess, engaging in offensive gestures and touching, and otherwise conducting himself inappropriately. Though defendant apparently never received a formal written complaint regarding Krug, a number of oral complaints were made. Krug's behavior was fairly common knowledge, as was his nickname, "Roger Crude."

On a number of occasions Krug's superiors admonished him about this behavior. Sometimes Krug briefly toned down his act, but the improvement was ephemeral. Although defendant was arguably aware of Krug's propensities, it nonetheless promoted him in 1989 to operations manager at the Hermiston facility where plaintiffs were employed. Upon arriving in Hermiston, Krug resumed his inappropriate behavior. Krug's antics are detailed at great length in Plaintiff's Objections, so there is no need to repeat them here. Meagher complained to some of her superiors, but Krug's behavior continued. This lawsuit followed.

## STANDARDS

■ The court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows

there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

■ The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). The court should resolve reasonable doubts about the existence of a material factual issue against the moving party. *Id.* at 631. The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *Id.* at 630–31.

### DISCUSSION

*Intentional Infliction of Emotional Distress:*

■ To state a claim for IIED, the plaintiff must show (1) defendant intended to inflict severe emotional distress on plaintiff, (2) defendant's acts were the cause of plaintiff's severe emotional distress, and (3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *Sheets v. Knight,* 308 Or. 220, 236, 779 P.2d 1000 (1989).

#### 1. Intent to Inflict Severe Emotional Distress on Plaintiff:

■ Plaintiffs detail dozens of alleged incidents involving Krug, but their knowledge of those incidents is mostly based on hearsay accounts provided by other employees. Many of the incidents didn't even occur at the Hermiston plant where plaintiffs were employed. Krug's conduct towards others may be relevant from the standpoint of demonstrating intent to cause extreme distress, or to show management was aware of his antics. However, only the conduct plaintiffs experienced is actionable. *See Christofferson v. Church of Scientology,* 57 Or.App. 203, 215 n. 9, 644 P.2d 577 (1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 439, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983).

■ The "fingers through her hair" remark is the only incident plaintiff Moore recalls in which Krug directed an off-color joke, vulgar word, or any other offensive conduct at her in particular. Moore Dep. at 42. The only conduct explicitly directed at plaintiff Meagher was a disparaging remark about her legs, and an allegedly defamatory comment made outside her presence.[1]

Meagher or Moore were also present during occasions when Krug told offensive jokes, used vulgar words, pinched an employee's buttocks, wore the infamous potato tie, and showed Tom Wamsley an obscene illustration. Even assuming Krug was aware of plaintiffs' presence and was directing his conduct towards them, the evidence does not support an inference that Krug intended to inflict *severe* emotional distress on plaintiffs.

■ Lack of foresight, indifference to possible distress, and even gross negligence are not enough to establish a claim for IIED under Oregon law. *See Hall v. The May Department Stores,* 292 Or. 131, 135, 637 P.2d 126 (1981). Nor is it enough that defendant intentionally acted in a way that causes such distress. *Patton v. J.C. Penney Co.,* 301 Or. 117, 122, 719 P.2d 854 (1986). The key focus in IIED cases is not on the result, but on the purpose and the means used to achieve it. *Id.* at 123, 719 P.2d 854. Krug's antics were obnoxious and immature, but did not evidence an intent to inflict severe emotional distress. At worst a jury might find Krug's antics were intended to make the listener uncomfortable.

■ Plaintiffs argue that since defendant was aware of Krug's propensity for inappropriate conduct, and promoted him anyhow,

---

1. Meagher also holds Krug responsible for the conduct of other employees at the plant because Krug was the operations manager and he condoned this sort of behavior. Meagher Dep. at

112. The only incident cited is the conduct of Rich Hastings, who showed Meagher a postcard depicting women in bikinis viewed from behind. *Id.*

defendant must have intended for Krug ·to act in this manner. Defendant should have confronted the situation more aggressively than it did, but that by itself cannot support a finding that defendant intended for Krug to sexually harass female employees, or to inflict severe emotional distress on them.

█ Plaintiffs also contend Krug and/or defendant need only have acted with "knowledge" or "reckless disregard" for the emotional distress that might be inflicted upon plaintiffs. Although earlier cases suggested recklessness might suffice in an employment situation, that dictum has since been partially disavowed. *See Franklin v. Portland Community College,* 100 Or.App. 465, 470 n. 1, 787 P.2d 489 (1990). Assuming the employer-employee relationship warrants application of a lower mental state requirement, the employer must have acted with "knowledge" of the consequences, i.e. substantial certainty, not just "reckless disregard for the consequences." *Id.*[2]

█ Plaintiffs ·cannot establish Krug or defendant knew plaintiffs would suffer severe emotional distress. Although Moore occasionally told Krug she thought a joke was "gross," she never asked him to stop telling stories. "[I]t was probably just as easy for me to get up and leave ... because the other gals that wanted to hear it stayed there." Moore Dep. at 34. Likewise, Meagher concedes she never confronted Krug about his behavior. Meagher Dep. at 111.

In plaintiffs' favor, there is evidence that over the years several people had spoken to Krug about his behavior. Michael Henderson warned Krug to be careful because his sexual jokes could get him charged with sexual harassment someday. Krug told Henderson not to worry because people know when I'm joking. Henderson Dep. at 6, 10. Trudy Johnson told Krug point-blank that she did not appreciate his behavior towards her. Thereafter, Krug left her alone. Trudy Johnson Interview. Thus plaintiffs may be able to show Krug was aware his

behavior might offend people. That falls far short of showing Krug or defendant knew it .was substantially certain his behavior would inflict *severe* emotional distress upon employees.

█ Plaintiffs suggest Krug "knew" Meagher would suffer extreme distress as a result of his actions towards other women because Krug knew Meagher would be the individual to hear complaints from other employees due to her position within the company. Meagher Aff. ¶ 2. Plaintiffs' theory of liability would create a cause of action on behalf of anyone who predictably learns second-hand about an outrageous incident. That is not the law.

Plaintiffs also contend an act directed at any female employee was an act directed at plaintiffs because Krug's conduct created .a "sexually hostile working environment." Plaintiffs' expert asserts women may suffer emotional distress on account· of sexual harassment directed at other women, because, *inter alia,* women identify with other women and are adversely affected by acts they perceive as intended to degrade, humiliate, embarrass or harass women as a class. Colistro Aff.

█ Liability for IIED cannot be predicated upon behavior towards a class. It is an individual tort directed at a particular victim, or at most someone who is present and personally witnesses the outrageous conduct. "Sexually hostile working environment" is a Title VII concept that has no place in an IIED action in Oregon.

█ Plaintiffs rely on *Dias v. Sky Chefs, Inc.,* 919 F.2d 1370, 1375 (9th Cir.1990), *vacated on other grounds,* —— U.S. ——, 111 S.Ct. 2791, 115 L.Ed.2d 965 (1991). In *Sky Chefs,* the Ninth Circuit said a jury could have found defendant created a sexually hostile working environment as a tactic designed to ˙stifle opposition to sexual harassment. Under Oregon law, infliction of distress need not be the defendant's ultimate objective, but

---

**2.** The Oregon Supreme Court later adopted the same analysis, but confused matters by using the label "reckless infliction of severe emotional distress." *See Hammond v. Central Lane Communications Center,* 312 Or. 17, 22, 816 P.2d 593 (1991). "Reckless" is a lower mental state requirement than "knowing." Despite the label, the court stated that a defendant would be liable if he acted with "knowledge" that his actions "will cause grave distress." *Id.*

can be a means for achieving an ulterior motive. *See Hall,* 292 Or. at 141–42, 637 P.2d 126; *Bodewig v. K–Mart, Inc.,* 54 Or. App. 480, 486, 635 P.2d 657 (1981), *rev. denied,* 292 Or. 450, 644 P.2d 1128 (1982). Accordingly, the plaintiff in *Sky Chefs* had satisfied the intent element. In the present case, there is no basis for inferring Krug or defendant intentionally inflicted emotional distress as a means to accomplish some ulterior goal. Plaintiffs don't even allude to what that goal might be.

### 2. *Defendant's Acts Must be the Cause of Plaintiff's Severe Emotional Distress:*

■ IIED requires a showing of far more than just the ordinary stresses and unpleasantries of daily life. The burden is on plaintiffs to present evidence that Krug's conduct inflicted the sort of anguish the Restatement described as "so severe that no reasonable man [or woman] could be expected to endure it." Restatement (Second) of Torts § 46 cmt. j.

■ Distress attributable to complaints from other workers who were harassed by Krug, or the general stresses of employment, is not actionable. Plaintiffs also cannot collect damages on account of embarrassment they felt for other employees. This is a borderline case, but plaintiffs have presented enough evidence to survive summary judgment on this element.

### 3. *Defendant's Behavior Must Constitute an Extraordinary Transgression of the Bounds of Socially Tolerable Conduct:*

■ Whether conduct may reasonably be regarded as so outrageous as to be actionable is, in the first instance, a question for the court. *Pakos v. Clark,* 253 Or. 113, 453 P.2d 682 (1969). I conclude that, even when viewed in the light most favorable to plaintiffs, Krug's behavior towards plaintiffs (including conduct plaintiffs merely witnessed) did not constitute an extraordinary transgression of the bounds of socially tolerable conduct under Oregon law. Oregon courts have construed this standard quite rigorously, even in cases involving employer-employee relationships. *See, e.g., Lewis v. Oregon Beauty Supply Co.,* 302 Or. 616, 733 P.2d 430

(1987); *Watte v. Edgar Maeyens, Jr., M.D., P.C.,* 112 Or.App. 234, 828 P.2d 479, *rev. denied,* 314 Or. 176, 836 P.2d 1345 (1992); *Madani v. Kendall Ford, Inc.,* 312 Or. 198, 818 P.2d 930 (1991); *Patton,* 301 Or. at 117, 123, 719 P.2d 854; *Snyder v. Sunshine Dairy,* 87 Or.App. 215, 742 P.2d 57 (1987).

Plaintiffs rely on *Sky Chefs,* but again that case is inapposite. In *Sky Chefs,* the Ninth Circuit held the injury plaintiff suffered was distinguishable from ordinary employment abuses because it was carried out in the context of a sexually abusive work environment intentionally established by Sky Chefs' local general manager to accomplish some ulterior motive. *Sky Chefs,* 919 F.2d at 1375. There is no evidence of that here.

### *The Magistrate's Recommendation:*

The magistrate acknowledged plaintiffs might have difficulty establishing the IIED claim at trial, but recommended denying the motion for three reasons. First, it was not clear from the record whether conduct that merely occurred in plaintiff's presence was "directed" to the plaintiffs. Second, there were material issues of fact as to whether the behavior was sufficiently egregious to support an IIED claim. Finally, the magistrate found no Oregon cases stating that "jokes" and insults are always insufficient to establish an IIED claim, regardless of their character or the frequency of repetition. The magistrate's reasoning is not persuasive.

■ First, plaintiffs could not prevail even if I assumed every incident occurring in plaintiffs' presence was "directed" at them. Second, whether conduct rises to the level of outrageous behavior is initially a question of law for the court to decide. *Pakos,* 253 Or. at 132, 453 P.2d 682. Finally, jokes and insults can, in a proper situation, be sufficiently egregious providing plaintiff is particularly sensitive, and defendant is aware of those sensitivities and seeks to exploit them. The remark about Meagher's legs was crude, but not an extraordinary transgression of the bounds of socially tolerable conduct. Krug was not commenting on a deformity, such as a missing limb or severe scarring. There is also no evidence the remark was part of a

prolonged campaign of taunting and ridicule about her legs.

Judgment must be entered for defendant on this claim.

*Punitive Damages:*

The Magistrate recommended striking the demand for punitive damages on the IIED claim because Oregon law prohibits an award of punitive damages where the underlying conduct is speech. In light of my disposition of the IIED claim, this issue is moot.

### CONCLUSION

I decline to adopt the Magistrate's Findings and Recommendation. Instead, I grant defendant's motion (31) for partial summary judgment on the IIED claim. The issue of punitive damages is moot.

### ORDER

I decline to adopt the Magistrate's Findings and Recommendation. Instead, I grant defendant's motion (31) for partial summary judgment on the IIED claim. The issue of punitive damages is moot.

IT IS SO ORDERED.

### OPINION ON RECONSIDERATION

Plaintiffs Ronda Meagher and Elizabeth Moore bring this action against defendant Lamb–Weston, Inc. to recover damages for alleged sexual harassment by operations manager Roger Krug. Two matters are presently pending. Plaintiffs move for reconsideration of my order granting summary judgment for defendant on plaintiffs' claim for intentional infliction of severe emotional distress ("IIED"). I deny the motion. Defendant appeals Magistrate Judge Jelderks' order denying a stay of the proceedings pending an immediate interlocutory appeal of my order of January 7 that reinstated plaintiffs' Title VII claims for compensatory and punitive damages and a jury trial. I affirm the magistrate's order.

### MOTION FOR RECONSIDERATION

I granted defendant's motion for summary judgment on the IIED claim because there was no evidence from which a reasonable jury could infer that either Krug or defendant Lamb–Weston intended to inflict severe emotional distress on these plaintiffs, or that Krug or defendant knew it was substantially certain their actions would result in the infliction of such distress. I also held Krug's behavior towards these plaintiffs was not so outrageous as to constitute "an extraordinary transgression of the bounds of socially tolerable conduct" under Oregon law. Plaintiffs now move for reconsideration.

Plaintiffs take issue with my conclusion that "sexually hostile working environment is a Title VII concept that has no place in an IIED action in Oregon." Contrary to plaintiffs' assertions, I did not assume conduct which violates a statute can never form the basis for an IIED claim. Rather, I held that under Oregon law, liability for IIED cannot be predicated on second-hand knowledge of Krug's conduct towards other employees. Plaintiff cites numerous cases to demonstrate that such knowledge can be used to establish the existence of a sexually hostile working environment, which in turn can be a basis for Title VII liability, but that has no bearing on the issue of liability for IIED. The latter is a distinct tort which must be analyzed apart from any Title VII claims.

The gist of plaintiffs' theory of liability is that a female employee who hears second-hand reports of inappropriate behavior by her supervisor towards co-workers has a claim for IIED. Liability is not premised on anything the supervisor did to that female employee in particular but rather her apprehension that the supervisor might someday act similarly towards her, and because the female employee empathizes with other women who are victims of sexual harassment, and feels degraded and humiliated because of what has allegedly happened to these other women. Plaintiffs' proposed theory would dramatically expand the scope of liability for IIED, allowing liability to be predicated upon emotional distress resulting from second-hand knowledge of offensive conduct directed at a class of whom plaintiff is a member. Whether such conduct ought to give rise to IIED liability is a decision reserved for the

Oregon legislature. and courts, not a federal judge exercising supplemental jurisdiction over state law claims. State law does not presently authorize such liability, and I decline plaintiffs' invitation to rewrite Oregon tort law.

Plaintiffs erroneously cite *Palmer v. Bi-Mart*, 92 Or.App. 470, 758 P.2d 888 (1988), for the proposition that general allegations of a "sexually hostile working environment" are sufficient to state a claim for IIED in Oregon. *Palmer* was a conventional IIED claim involving a supervisor who allegedly sought to inflict emotional distress upon a particular employee. The plaintiff in *Palmer* did not claim she was injured by second-hand accounts of offensive remarks her supervisor had made to other employees, or by the stress of working with a supervisor who acted degradingly towards women in general. Oregon's appellate courts have never imposed liability in an IIED case based solely on a plaintiff's mere apprehension as to what a person *might* someday say or do, or a plaintiff's empathy for the plight of co-workers. Without exception, liability for IIED in Oregon has invariably been predicated upon actual conduct purposely directed at the plaintiff, with the intent to cause distress being either the primary goal or a means to achieve an ulterior objective.

Plaintiffs next argue that I erred by finding there was insufficient evidence from which a jury could infer defendant intended to inflict severe emotional distress upon plaintiff, again citing *Palmer*, 92 Or.App. 470, 758 P.2d 888. In *Palmer*, the employer was allegedly informed of a continuing course of intentional conduct aimed specifically at harming the plaintiff, but took no action to halt the campaign of harassment. *Id.* at 476, 758 P.2d 888. The court of appeals thought that on these facts, a jury might be able to infer that the supervisor's actions reflected

the deliberate intent of the employer. *Id.* The court carefully distinguished prior decisions by the state's highest court. *See Bakker v. Baza'r, Inc.*, 275 Or. 245, 253–54, 551 P.2d 1269 (1976) (security guard committed battery on employee; no intent to injure on employer's part even though employer subsequently ratified employee's tortious conduct); *Caline v. Maede*, 239 Or. 239, 396 P.2d 694 (1964) (no intent to injure on employer's part even though employer had failed to correct conditions that injured the worker twice before).

■ There is some question whether Oregon's highest court would even follow *Palmer*, given recent Oregon decisions that suggest a heightening of the standard for proving IIED in the workplace.[1] In any event, the present case is distinguishable. There is no evidence from which a jury could infer that defendant knew Krug had been inflicting, or was substantially certain to inflict, severe emotional distress on plaintiffs, or that defendant had "the intent to do the painful act with knowledge that it will cause grave distress." *Hall v. The May Dept. Stores*, 292 Or. 131, 135, 637 P.2d 126 (1981).

Plaintiffs mostly rely on vague oral complaints allegedly made by other employees while Krug was employed at another plant. Plaintiffs contend that as a result of those complaints, defendant had actual notice that if Krug were placed in charge of the Hermiston plant, he was substantially certain to inflict severe emotional distress on the female employees. There is no basis for that supposition.

As for the incidents at the Hermiston plant, plaintiff Moore never complained to any company officials. Moore Depo. at 38. Plaintiff Meagher concedes she did not complain to Jim Heimbecker, who was Krug's immediate supervisor. Meagher Depo. at 55.

---

1. *See Hammond v. Central Lane Communications Center*, 312 Or. 17, 22, 816 P.2d 593 (1991); *Madani v. Kendall Ford, Inc.*, 312 Or. 198, 818 P.2d 930 (1991); *Lewis v. Oregon Beauty Supply*, 302 Or. 616, 733 P.2d 430 (1987); *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or.App. 234, 828 P.2d 479, *rev. denied*, 314 Or. 176, 836 P.2d 1345 (1992); *Franklin v. Portland Community College*, 100 Or.App. 465, 470 n. 1, 787 P.2d 489 (1990). Although *Hammond* occasionally used the term "reckless", the court described the requisite mental state in an employment context as "the intent to do the painful act with knowledge that it will cause grave distress ..." *Hammond*, 312 Or. at 27, 816 P.2d 593. Therefore, while plaintiffs need not show defendant desired to inflict grave distress upon them, defendant must have known that result was substantially certain to flow from the conduct at issue.

In fact, the only company official above Krug whom plaintiff spoke to was Bud Smith, and Meagher concedes she did not give Smith any specifics. *Id.* at 52, 54. Meagher says she described in general terms complaints she had received from other employees that Krug had told off-color jokes, used profane language, made sexual innuendos, and shook hands in a "lewd" manner. *Id.* at 34–38, 52. However, there is no evidence she told Smith that Krug was inflicting severe emotional distress on her or on anyone else, or gave Smith reason to believe there was an emergency situation that required immediate action to prevent the infliction of severe emotional trauma.

Nor is there evidence Smith callously ignored Meagher's concerns. On the contrary, Smith suggested she file a formal complaint. *Id.* at 52–54. However, Meagher never did file a written grievance with the company, or otherwise provide any official at Lamb–Weston in a position of authority over Krug with sufficient information to permit the company to take action. Smith now was on notice of a potential problem, but he had no names, no details, no written complaint, no complaining witness, and no reason to comprehend the gravity of the situation. Had defendant summarily removed Krug from his position as plant manager on the basis of nebulous second-hand oral allegations of misconduct, defendant might well have been facing a lawsuit from Krug. Smith says Meagher promised to furnish him with the names of the employees who were allegedly harassed and details of the incidents, but she never did. Smith Depo. at 25. Plaintiff has not contradicted Smith's testimony. Several months later, plaintiff Meagher met with the company president, Richard Porter, and explained the problem in greater detail. Krug was promptly removed from his position as operations manager. Plaintiff filed suit anyhow.

■ On these facts, the most plaintiff could hope to prove is that defendant Lamb–Weston was aware, or should have been aware, that Krug had a tendency to use profane language, tell off-color jokes, comment on the attributes of women, hoist outhouses on top of buildings, and otherwise behave in an unprofessional manner. That falls far short of establishing defendant knew Krug would inflict grave distress on its female employees if placed in charge of the Hermiston plant, or allowed to remain in that position.[2] Although courts are generally cautious about granting summary judgment when motivation and intent are at issue, there are cases where such relief is appropriate. *Foster v. Arcata Assoc., Inc.,* 772 F.2d 1453, 1459 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986). This is one of them.

■ Plaintiffs also question my determination that Krug's behavior towards plaintiffs (including conduct plaintiffs merely witnessed) did not constitute an extraordinary transgression of the bounds of socially tolerable conduct under Oregon law. Plaintiffs contend that sexual harassment is *per se* outrageous behavior. I disagree. Plaintiffs' argument erroneously assumes sexual harassment cases are fungible. On the contrary, the term has been loosely applied to a range of offensive conduct that may include anything from off-color jokes to battery, coerced sexual favors, and rape. Each case must be evaluated separately.

The most analogous decision by the Oregon Supreme Court is *Lewis,* 302 Or. 616, 733 P.2d 430. In *Lewis,* a supervisor (who was also the owner's son) repeatedly harassed an employee who refused to continue dating him. The son told other employees that plaintiff had given him a venereal disease. *Id.* at 618–19, 733 P.2d 430. While at work, he swore at her, called her a whore, searched her personal belongings, threw things at her, slammed a door which struck plaintiff, and even followed plaintiff to her car, demanded a ride home, and engaged in fisticuffs with several passers-by who at-

---

**2.** Plaintiffs have also argued that because Meagher's duties required her to listen to employee complaints, defendant must have known she would be exposed to reports of Krug's misbehavior, and would predictably suffer distress therefrom. That raises the interesting question of whether an employee whose duties include listening to employee complaints can sue her employer for IIED, citing as the cause of her distress the very complaints she was paid to hear. Since neither party briefed this issue, I will not address it here.

tempted to pull him away from her. *Id.* at 618–19, 733 P.2d 430. The employee complained to the owner on at least two occasions, but the abuse continued. *Id.* at 624, 733 P.2d 430. Finally, the owner suggested it might be better if the employee found another job. *Id.* at 619, 733 P.2d 430. Plaintiff filed suit against the owner and the business seeking damages for IIED. The Oregon Supreme · Court unanimously upheld a directed verdict for defendant. *Id.* at 628, 733 P.2d 430. . Neither the underlying conduct, nor the owner's failure to respond to the problem, were deemed sufficiently outrageous as to state a claim for IIED under Oregon law. *Id.* When viewed in light of *Lewis,* Krug's conduct towards plaintiffs may have been offensive, but it did not rise to the extraordinary degree of egregiousness required to state a claim for IIED in Oregon.

 Plaintiffs cite several cases in which courts have held that a sexual harasser may be found liable for IIED. Only two of those cases purport to construe Oregon law. Neither case is from Oregon's highest court, and neither is on point. In both cases there was a campaign of sexual harassment aimed directly at the plaintiff, and the harasser intended to inflict emotional distress on the plaintiff. *See Palmer,* 92 Or.App. 470, 758 P.2d 888; *Dias v. Sky Chefs, Inc.,* 919 F.2d 1370 (9th Cir.1990), *vacated on other grounds,* —— U.S. ——, 111 S.Ct. 2791, 115 L.Ed.2d 965 (1991).[3] The present case is readily distinguishable.

Plaintiffs also contend that even if Krug's actions towards plaintiffs did not constitute outrageous conduct, defendant Lamb–Weston's conduct did. I disagree. Defendant's handling of this situation may not have been exemplary, but its conduct towards plaintiffs did not rise to the level of outrageous behavior required for plaintiffs to prevail under Oregon law. *Cf. Lewis,* 302 Or. at 628, 733 P.2d 430.

. Plaintiffs next assert that in determining whether Krug's conduct constituted outrageous behavior, I considered only the remark about Meagher's leg. That is incorrect. I expressly assumed conduct which occurred in plaintiffs' presence was directed at plaintiffs. Opinion of February 16, 1993 at 10, 12. Finally, plaintiffs contend that under Oregon law, an IIED plaintiff need only establish he was subjected to distress which is more than merely mild and transitory, citing *Rockhill v. Pollard,* 259 Or. 54, 63–64, 485 P.2d 28 (1971). In *Rockhill,* a young mother appeared at a physician's door in winter carrying an unconscious child, and was rudely turned away. Although the mother could not prove she had suffered serious emotional distress, the *Rockhill* court cited the special relationship between a physician and patient as a justification for upholding the award of damages. *Rockhill* has long since been confined to its peculiar facts. The governing standard in this case is set forth in *Hammond,* 312 Or. at 22, 27–28, 816 P.2d 593, and *Madani,* 312 Or. 198, 203–05, 818 P.2d 930.

## MOTION FOR STAY

 Defendant moved for a stay pending an immediate interlocutory appeal of my order of January 7 reinstating plaintiffs' Title VII claims for compensatory and punitive damages and a jury trial. Judge Jelderks denied the motion because (1) the outcome of the appeal was a foregone conclusion, and (2) he thought it possible to craft a jury trial where punitive damages would be a separate line item on the jury verdict that could be deleted if the Supreme Court held the Civil Rights Act of 1991 did not apply retroactively.

 The magistrate's ruling on a nondispositive issue will be reversed only if it is "clearly erroneous or contrary to law." *Bhan v. NME Hospitals, Inc.,* 929 F.2d 1404 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). I have read the objections and find no error.

---

**3.** A federal court construing state law must follow the decisions of the state's highest court unless there is convincing evidence the state court would no longer follow its prior precedents. *See New Hampshire Ins. Co. v. Vieira,* 930 F.2d 696, 701 (9th Cir.1991). To the extent *Palmer* and *Lewis* conflict, a recent decision from the state's highest court is entitled to greater deference than an unappealed intermediate appellate decision. *See Ogden Martin Systems, Inc. v. San Bernardino County,* 932 F.2d 1284, 1289 (9th Cir.1991).

## CONCLUSION

I deny plaintiffs' motion (# 77) for reconsideration of my order of February 16, 1993. I deny defendant's appeal (# 79), and affirm the magistrate's order (# 76) of March 8, 1993 denying defendant's motion for a stay of proceedings (# 68–1) and an immediate interlocutory appeal (# 68–2).